**Francis and Margaret PISCIOTTA,
Appellants,**

**v.**

**SHEARSON LEHMAN BROTHERS,
INC., Appellee.**

**No. 92–CV–366.**

District of Columbia Court of Appeals.

Argued June 16, 1993.

Decided Aug. 5, 1993.

Arthur M. Schwartzstein, Washington, DC, for appellants.

Charles R. Mills, Washington, DC, for appellee.

Before FERREN, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

This is an appeal from the dismissal of an action by which appellants sought damages for alleged misconduct by appellee, including fraud and breach of an implied duty of fair dealing, in the course of an arbitration proceeding. The arbitration resulted in an award for appellants, but they maintained in their suit that appellee's conduct had been designed "to hinder and defraud [appellants] and the arbitration panel," presumably resulting in an award less than appellants would have received but for the fraud and unfair dealing. Although appellants strenuously maintain that the damages they seek are unrelated to the size of the arbitration award, we conclude that what they have mounted is an impermissible collateral attack on the award in a manner that, if permitted, would circumvent the exclusive statutory remedy by which such awards may be vacated on grounds of fraud and related conduct.

## I.

In September 1986, appellants began a voluntary arbitration proceeding with the National Association of Securities Dealers (NASD), seeking damages from E.F. Hutton & Co. (now Shearson Lehman Brothers (Shearson)) as well as from Elizabeth P. Christianson, Hutton's representative in charge of appellants' securities account. In their Statement of Claim, appellants alleged (1) that Shearson/Hutton had purchased bonds from appellants for $178,398 dollars less than the value Shearson itself had placed on the bonds, and (2) that Shearson sold one thousand shares of stock for appellants for fifty dollars per share, contrary to appellants' instructions that the stock be sold when it reached fifty-five dollars per share.[1] In keeping with NASD's Code of Arbitration Procedure, each party signed a Uniform Submission Agreement to arbitrate the claim. On June 6, 1988, a three member panel of NASD arbitrators dismissed the claim against Christianson, but found Shearson liable to appellants for $40,000, which Shearson has since paid in full.

In April 1990, appellants filed a new arbitration claim, this time alleging that Shearson had breached its contract to arbitrate in good faith and consistent with its implied duty of fair dealing. Upon Shearson's objection that appellants were merely attempting to reopen the arbitration award, NASD refused to hear the claim as an improper subject for arbitration. Appellants then filed a complaint in the Superior Court on August 9, 1991, alleging that Shearson had committed "flagrant breach of contract, including breach of the implied duties of good faith and fair dealing; fraud, negligent misrepresentation, and prima facie tort . . . in connection with a securities arbitration held in the District of Columbia." The complaint asserted that in pre-hearing discovery and during the arbitration hearing itself, Shearson intentionally withheld from appellants and the arbitrators information that Christianson had left Shearson not for "personal reasons," as she testified during the arbitration, but because she had stolen large sums of money from the firm, falsified documents, and was under federal criminal investigation.[2] Appellants further alleged that Shearson had acted improperly in permitting Christianson, who was represented by her own counsel, to testify that she had left Shearson for "personal reasons" and in arguing Christianson's credibility to the arbitrators. Appellants sought damages in an amount

1. Appellants alleged violations of federal securities laws and the RICO statute, fraud, breach of contract, negligent misrepresentation, breach of fiduciary duty and breach of NASD rules.

2. Appellants claimed that both NASD rules and their discovery requests had required Shearson to release all information relating to Christianson. The complaint also alleged that "Shearson represented to the [arbitration] panel that there were no customer complaints or other documents evidencing supervision or lack of supervision of Ms. Christianson," despite the fact that Shearson knew she was being investigated for engaging in a scheme to defraud investment clients beginning in approximately December 1986 and continuing until January 1988. According to the complaint, Christianson was convicted on November 10, 1988, of charges arising from the investigation.

to be proven at trial, including punitive damages, costs and attorney's fees.

Shearson moved to dismiss the complaint under Super.Ct.Civ.R. 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. It asserted that appellants' suit was an impermissible collateral attack on the June 6, 1988, arbitration proceeding because appellants had failed to challenge the arbitration award in the manner and within the time provided by the arbitration statutes. In opposing the motion to dismiss, appellants argued that their claims of fraud and misconduct were not within the scope of the original agreement to arbitrate and had not been considered—indeed, could not have been considered—in the original arbitration proceeding, and thus were properly before the Superior Court. The trial court granted Shearson's motion to dismiss.

## II.

We have previously stated that "[t]he authority of courts to interfere in contractually mandated arbitration proceedings is governed by arbitration statutes." *Thompson v. Lee*, 589 A.2d 406, 410 (D.C. 1991). In this case, the parties do not join issue on which arbitration statute—the District of Columbia's or the federal statute—governs because appellants argue, despite the principle stated in *Thompson*, that neither statute applies to their suit for fraud and misconduct in the arbitration process.[3] In so contending, appellants attempt to turn what appears to be a fact destructive of their position to their advantage. They acknowledge that the arbitration statutes (both federal and local) provide an explicit remedy for claims that an arbitration award was procured by fraud or "undue means." They contend, however, that be-

cause the remedy furnished by the statute is inadequate to make them whole for Shearson's alleged misconduct or to deter parties like Shearson from breaching the implied agreement to deal fairly in the arbitration process, the statute must be read to leave intact appellants' common law right to sue for breach of contract and related torts in connection with the arbitration. We are unpersuaded by this argument.

■ Our decisions, like those of the federal courts, have emphasized the "fundamental and powerful" policy "embodied" in modern arbitration statutes that favors voluntary commercial arbitration "and narrowly constricts the scope of judicial intervention" in such proceedings. *Hercules & Co. v. Shama Restaurant Corp.*, 613 A.2d 916, 922 (D.C.1992) (quoting *Hanes Corp. v. Millard*, 174 U.S.App.D.C. 253, 267, 531 F.2d 585, 599 (1976)). Indeed, as we indicated in *Thompson, supra*, this policy dictates that courts may interfere with the outcome of arbitration only to the extent permitted by arbitration statutes. 589 A.2d at 410. The District of Columbia Uniform Arbitration Act[4] provides an explicit judicial remedy for the misconduct alleged in appellants' complaint. D.C.Code § 16–4311(a)(1) states that, "[u]pon application of a party, the Court shall vacate an [arbitration] award where ... [t]he award was procured by corruption, fraud or other undue means."[5] As we pointed out in *Thompson*, § 16–4311(a)(1) "cover[s] fraudulent conduct that transpired during the arbitration proceedings." 589 A.2d at 412 n. 7 (dicta). If it finds such misconduct, the court "may order a rehearing before new arbitrators chosen as provided in the [parties'] agreement...." § 16–4311(c). Importantly, however, the statute limits the time within which such claims may be

---

3. The Federal Arbitration Act applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2 (1988); *see Coles v. Redskin Realty Co.*, 184 A.2d 923, 926–27 (D.C.1962). In *Thompson*, we expressed no opinion on whether jurisdiction under the federal statute would be concurrent with jurisdiction under the District's arbitration statute. 589 A.2d at 410 n. 3. We need not decide that issue in this case either.

4. D.C.Code §§ 16–4301 *et seq.* (1989).

5. The federal arbitration statute likewise provides that an arbitration award may be vacated "[w]here the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a).

asserted: "[a]n application under this section ..., if predicated upon corruption, fraud or other undue means, ... shall be made within ninety days after such grounds are known or should have been known." D.C.Code § 16–4311(b).[6]

Appellants concede that they took no action under the statute within this time period.[7] Thus, were we to allow their independent suit for fraud in the arbitration process, we would permit them to bypass both the express remedy in the arbitration statute for that conduct and, equally important, the express time limit within which such grounds must be asserted. We decline to do so and, instead, hold with other courts which have considered the issue that "[t]he Arbitration Act provides the exclusive remedy for challenging conduct that taints an arbitration award within the Act's coverage." *Foster v. Turley, supra* note 6, 808 F.2d at 41–42.

*Corey v. New York Stock Exchange,* 691 F.2d 1205 (6th Cir.1982), is the leading case holding that allegations of misconduct in the arbitration process do not make out an independent claim for which a court may award damages.[8] In *Corey,* the plaintiff-appellant sought punitive damages for alleged misconduct in the course of an arbitration proceeding that had been resolved in favor of his opponent, Merrill Lynch, Pierce, Fenner & Smith. After unsuccessfully suing Merrill Lynch and claiming that it had conspired with the New York Stock Exchange (NYSE) to deprive him of a fair arbitration hearing, the plaintiff sued NYSE alone, alleging that its assistant arbitration director, responsible for preliminary oversight of the arbitration between plaintiff and Merrill Lynch, had denied him a fair hearing by selecting biased members of the arbitration panel and rescheduling hearings over plaintiff's objections. The district court granted summary judgment in favor of NYSE. The Sixth Circuit affirmed, reasoning that 9 U.S.C. § 10(a) provides the exclusive remedy for allegations that an arbitration award was tainted by misconduct committed during the proceeding. The court explained:

> Corey's claims constitute a collateral attack against the award even though Corey is presently suing a different defendant than his original adversary in the arbitration proceeding and is requesting damages for the acts of wrongdoing rather than the vacation, modification or correction of the arbitration award.... Corey's complaint has no purpose other than to challenge the very wrongs affecting the award for which review is provided under section 10 of the Arbitration Act. The mere presence of the NYSE, Cavell [the assistant arbitration director] or the arbitrators or the prayer for damages does not change the substance of his claim. Very simply, Corey did not avail himself of the review provisions of

**6.** *Although the federal statute does not incorporate in terms a discovery rule ("known or should have known") into its parallel three-month limitations provision,* 9 U.S.C. § 12, *it seems probable that courts will read one into the statute by implication for fraud-type claims. See Foster v. Turley,* 808 F.2d 38, 42 (10th Cir. 1986); *see also Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) *(doctrine that limitation period is tolled where plaintiff has been injured by fraud and remains ignorant of it through no fault or lack of diligence on his part "is read into every federal statute of limitation").*

**7.** Appellants were aware of the alleged misconduct in April 1990 at the absolute latest, when they filed their second Statement of Claim with NASD. They filed their complaint in Superior Court on August 9, 1991, more than ninety days after they became apprised of the conduct forming the basis of their claim. They correctly make no argument that filing the second Statement of Claim tolled the limitations period under § 16–4311(b). *See Tung v. W.T. Cabe & Co.,* 492 A.2d 267, 269–70 (D.C.1985) (motion for reconsideration of arbitration award with NASD, which is not authorized under the NASD Code of Arbitration Procedure, does not toll the limitation period set forth in D.C.Code § 16–4311(b)).

**8.** *Corey* interpreted 9 U.S.C. § 10(a), the federal counterpart to D.C.Code § 16–4311(a). Because the District's arbitration statute and the federal act are "substantially similar," "federal court decisions construing and applying the federal arbitration act may be regarded as persuasive authority in construing and applying the corresponding provisions of the District of Columbia arbitration act." *Hercules & Co., v. Beltway Carpet Service, Inc.,* 592 A.2d 1069, 1072–73 (D.C.1991).

section 10 of the Arbitration Act and may not transform what would ordinarily constitute an impermissible collateral attack into a proper independent direct action by changing defendants and altering the relief sought.

*Id.* at 1213. The court further reasoned that "[t]he three month notice requirement in section 12 [corresponding to D.C.Code § 16–4311(b)] for an appeal of the award on section 10 or 11 grounds is meaningless if a party to the arbitration proceedings may bring an independent direct action asserting such claims outside of the statutory time period provided for in section 12." *Id.*

Similarly, in *Foster v. Turley, supra* note 6, the court held that 9 U.S.C. § 10(a) provides the exclusive remedy for a claim that a party's failure to disclose material facts during an arbitration proceeding tainted the award. "Contracts to arbitrate are not to be undermined by allowing one party to ignore the contract and resort to the courts. When, as here, a suit is in substance no more than a collateral attack on the award itself, it is governed by the provisions of the Act." *Id.* at 42 (citation omitted). *See also Tamari v. Bache & Co. (Lebanon) S.A.L.,* 565 F.2d 1194, 1202 (7th Cir.1977), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978); *Austern v. Chicago Bd. Options Exchange,* 716 F.Supp. 121, 124 (S.D.N.Y.1989), *aff'd,* 898 F.2d 882 (2d Cir.), *cert. denied,* 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990).

■ Appellants contend that, unlike in *Foster, supra,* their suit *is* "in substance ... more than a collateral attack on the [arbitration] award itself...." They claim that they do not seek to disturb the $40,000 award in their favor; the damages they request do not stem from the underlying conduct of Shearson that appellants agreed to arbitrate, but from Shearson's independent acts in allegedly corrupting the arbitration process. Without the damages a court may award them in the present suit, appellants contend, they cannot be made

whole by merely repeating the arbitration process—the sole remedy specified by statute—and Shearson will have suffered nothing but litigation expenses by unsuccessfully gambling (as appellants view it) on the outcome of an unfair proceeding.

We disagree and conclude, as did the court in *Corey,* that appellants have essentially brought an impermissible collateral attack on the arbitration award even though they are "requesting damages for the acts of wrongdoing rather than the vacation ... of the arbitration award." 691 F.2d at 1213.[9] Shearson is assuredly correct in arguing that what appellants seek, in critical part, is "to augment and modify the relief granted them by the arbitrators in their award." The principal measure of the injury appellants allegedly suffered from Shearson's deception and unfair dealing was the arbitration award they would have received but for that conduct, less the actual award. The remedy furnished by the statute redresses that injury by providing a new arbitration hearing. It is true that the statute makes no provision for costs, attorney's fees, or other damages (including exemplary) to compensate the party victimized by the tainted award. But, contrary to appellants' argument, this provides an insufficient basis for relieving them of their failure to pursue the remedy specified by the statute.

■ First, appellants have not persuaded us that either the arbitration statute or the policies underlying arbitration would prevent a new arbitration panel from devising remedies that take into account a party's fraud in the vacated proceeding. Courts have recognized the authority of arbitrators to impose sanctions, presumably including costs and attorney's fees, for misconduct such as discovery abuses revealed during the arbitration proceeding. *E.g., Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas,* 915 F.2d 1017, 1023 n. 8 (5th Cir.1990) ("Arbitrators may ... devise appropriate sanctions for abuse of the arbi-

---

9. Appellants' reliance on *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049 (2d Cir.1990), is misplaced because the alleged misconduct in that case—the obtaining of a wrongfully-issued injunction by Merrill Lynch—took place in a judicial proceeding separate from the arbitration, not within the arbitration proceeding itself.

tration process"); *Bigge Crane & Rigging Co. v. Docutel Corp.*, 371 F.Supp. 240, 246 (E.D.N.Y.1973) ("[A]rbitrators ... may be able to devise sanctions if they find that [a party] has impeded or complicated their task by refusing to cooperate in pretrial disclosure of relevant matters"). We do not see why that authority should vanish when the wrongdoing has been concealed from the arbitrator but discovered by a court, which then orders a new hearing. Nor have appellants demonstrated why the regime under which they chose to arbitrate bars a remedy within the arbitration for after-discovered misconduct. Under NASD's Code of Arbitration Procedure, a member such as Shearson must ("shall") "upon the demand of [a] customer" agree to arbitrate "any dispute, claim or controversy arising out of" the member's business. Appellants' original Statement of Claim, which Shearson agreed to arbitrate, asked for damages that included "punitive damages, interest, costs and attorney's fees." Appellants have shown us no reason why, assuming they had succeeded in vacating the award under the statute, Shearson as an NASD member would not have been required to arbitrate an *amended* claim by appellants asserting both the original damages and those arising from Shearson's (by then confirmed) misconduct in the first proceeding. The suggestion that the arbitrators would have been obliged to ignore antecedent events in arriving at an award seems to us quite implausible.

■ But even laying this possibility aside and conceding for argument's sake that, absent express agreement of the parties, arbitrators lack authority to grant remedies coextensive with the damages a court may award, we nonetheless are unwilling to permit an action which the arbitration statutes and cases interpreting them foreclose. Appellants agreed to arbitration in the first place rather than a suit in court. They did so knowing (or constructively knowing) that the statute specifies a remedy for misconduct in the arbitra-

tion process. They were further aware, or should have been aware, of the time limit for such claims and of the possibility that, while arbitrators have considerable "flexibility in fashioning remedies," *Willoughby Roofing & Supply Co. v. Kajima Int'l, Inc.*, 598 F.Supp. 353, 357 (N.D.Ala.1984), *aff'd*, 776 F.2d 269 (11th Cir.1985), those measures may not be identical to the remedies a court may order. *See Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 832, 353 N.E.2d 793, 794 (1976) (while arbitrators "generally are free to fashion the remedy appropriate to the wrong, ... an authentic remedy is compensatory and measured by the harm caused"; "strong policies," on the other hand, "confine to the State and its courts the infliction of punitive sanctions on wrongdoers"). Parties elect arbitration, and are encouraged to do so, because of the "manifold" advantages such proceedings offer, *i.e.:*

> [speed and economy], informality, the possibility of coordination with other modes of conciliation, and the ability to preselect the location of, a set of procedural rules or substantive law governing, or even the language to be used in, dispute resolution.

*Hanes Corp.*, 174 U.S.App.D.C. at 265, 531 F.2d at 597. And the statutes governing arbitration stand as a protection against corruption of those proceedings. Allowing parties to arbitration to secure those advantages and yet to pursue damages in court for alleged unfairness in the arbitration process would, we conclude, exceed the limited scope of proper judicial intervention in this area.[10]

*Affirmed.*

---

10. There is no merit to appellants' remaining contention that Shearson, in moving to dismiss their complaint, relied on exhibits outside the

pleadings and thus exceeded the lawful scope of a Rule 12(b)(6) motion to dismiss. Shearson's motion attacked the legal sufficiency of the

complaint, a proper ground for dismissal under Rule 12. Further, each exhibit attached to the motion had been referred to in the complaint, so Shearson did not rely on matters outside the complaint to support its motion. *See* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327 at 762–63 (1990) ("[W]hen plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading."); *see also Feinman v. Schulman Berlin & Davis,* 677 F.Supp. 168, 170 n. 3 (S.D.N.Y.1988) (document referred to in pleadings but not attached thereto properly considered in motion to dismiss; document found to be incorporated by reference in complaint).

Nor did the trial judge improperly deny appellants leave to amend their complaint. No amendment would have altered the fact that appellants' exclusive remedy lay within the arbitration statute.