**PRUDENTIAL SECURITIES INCORPORATED, a Delaware corporation and J. Frederic Storaska, Plaintiffs,**

v.

**Arthur HORNSBY, Defendant.**

**No. 94 C 1958.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 23, 1994.

---

Miriam Goldman Bahcall, Timothy A. Nelsen, Rawn H. Reinhard, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for plaintiffs.

Norman Rifkind, Beigel, Schy, Lasky, Rifkind, Goldberg & Fertik, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Prudential Securities Incorporated and J. Frederic Storaska ("Prudential") seek declaratory and injunctive relief to enjoin Arthur Hornsby from arbitrating a claim before the National Association of Securities Dealers ("NASD"). Hornsby files a cross-motion to compel arbitration.

### BACKGROUND

The essential facts are undisputed. Prudential bought and sold securities for Hornsby. The brokerage contract provided that any dispute between Hornsby and Prudential relating to the securities account would be settled by arbitration before the American Arbitration Association ("AAA") or the New York Stock Exchange ("NYSE"). In November 1990, Hornsby filed a demand for arbitration and statement of claim with the AAA seeking $950,000 in damages for wrongful conduct by Prudential. Specifically, Hornsby alleged that Storaska, an employee of Prudential, mismanaged his account, resulting in a considerable loss. Hornsby also alleged that Prudential had supervised Storaska inadequately and fraudulently concealed his wrongdoing. In January 1993, the AAA awarded Hornsby $290,000 in full settlement of his claims, and Prudential paid the award on February 11, 1993.

On October 6, 1993, ten months after the AAA award, Hornsby filed his current arbitration claim with the NASD. In the NASD claim, Hornsby alleges a conspiracy between Prudential and Storaska "in connection with the conduct of a prior arbitration between the parties held under the auspices of the [AAA]." In particular, Hornsby claims that Prudential feigned compliance with his document requests during the AAA arbitration while fraudulently concealing internal memo-

randa that confirmed Storaska's improper sales practices and Prudential's toleration of those practices. Surmising that the AAA award would have been higher had the arbitrators known of the memoranda and Prudential's attempt to suppress them, Hornsby seeks compensatory and punitive damages in excess of $1,000,000 against Prudential.

In a series of letters and motions, Prudential asked the NASD to decline the arbitration. Although the NASD initially refused Prudential's request, it has since reversed itself and decided that it will not hear Hornsby's claim. Hornsby has asked the NASD for reconsideration. The NASD's reconsideration decision is pending.

### DISCUSSION

Prudential seeks to enjoin the NASD arbitration and to obtain a declaration that Hornsby's claim is an impermissible collateral attack on his original arbitration award. In contrast, Hornsby asks the court to compel the NASD arbitration. Both parties move for judgment on the pleadings. Fed. R.Civ.P. 12(c). Judgment on the pleadings is proper if it is "beyond doubt that the non-movant can plead no facts that would support his claim for relief." *United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir.1991); *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989). Although the court may not look beyond the pleadings to render its decision, it may consider documents incorporated by reference to the pleadings. *Wood,* 925 F.2d at 1581. Uncontested allegations to which a party could respond are taken as true, *Flora v. Home Federal Savings & Loan Ass'n,* 685 F.2d 209, 211 (7th Cir.1982), and all facts are viewed in the light most favorable to the nonmoving party. *Wood,* 925 F.2d at 1581.

### 1. *Choice Of Law*

Prudential and Hornsby disagree on the law governing this dispute.[1] Prudential contends that the Federal Arbitration Act ("Act"), 9 U.S.C. §§ 1–16, is the applicable

law for four alternative reasons: (1) the AAA arbitration stemmed from a securities contract between Prudential and Hornsby that related to interstate commerce; (2) Hornsby previously supported his NASD claim by invoking the Act; (3) the contract between Prudential and the NASD relates to interstate commerce; and (4) the Act preempts state arbitration law if the contract providing for arbitration relates to interstate commerce. Hornsby, on the other hand, argues that the FAA does not apply because his NASD claim is a common law fraud action bearing no relation to interstate commerce. Hornsby does not suggest an alternative choice of law, although he cites New York cases.

Notwithstanding the parties' arguments, the only relevant law is that governing the original arbitration. The Federal Arbitration Act creates a body of substantive federal arbitration law governing any agreement that is within its coverage. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The Act applies to written arbitration provisions in any contract evidencing a transaction involving commerce, 9 U.S.C. § 2; *Moses,* 460 U.S. at 24, 103 S.Ct. at 941, and its reach is coextensive with Congressional power to regulate under the Commerce Clause. *Snyder v. Smith,* 736 F.2d 409, 418 (7th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984); *see also* 9 U.S.C. § 1. It is axiomatic that the purchase and sale of securities relates to interstate commerce. As a result, Hornsby's AAA arbitration is governed by federal arbitration law because it arises from a securities brokerage contract. *See, e.g., Austin Municipal Secur., Inc. v. NASD,* 757 F.2d 676, 697 (5th Cir.1985) (arbitration clause in brokerage contract "evinces a transaction involving commerce"); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (applying Act to arbitration conducted pursuant to brokerage contract).

---

1. The parties disagree over choice of law because some state arbitration laws allow more time in which to file a motion to vacate or modify a previous arbitration award. As discussed below, the limitations issue has no effect on this motion.

Neither Prudential nor Hornsby contends that choice of law affects whether Hornsby's NASD action is considered an independent claim or an impermissible collateral attack on the previous arbitration award.

■ Under the Act, an arbitration award is final unless either party moves to vacate or modify the award under section 10 [2] within the three month time period prescribed by section 12.[3] *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1212 (6th Cir.1982). Section 10 strictly limits the grounds available for vacating an award, and it is the exclusive remedy for misconduct in an arbitration proceeding governed by the Act. *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194, 1202 (7th Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978); *Foster v. Turley*, 808 F.2d 38, 41–42 (10th Cir.1986); *Corey*, 691 F.2d at 1212. The strictures of section 10 and section 12 are designed to afford an arbitration award finality in a timely fashion, promoting arbitration as an expedient method of resolving disputes without resort to the courts. *Chauffeurs, Teamsters, etc. v. Jefferson Trucking Co.*, 628 F.2d 1023, 1027 (7th Cir. 1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). Because Hornsby's first arbitration was governed by the Act, the award can only be modified pursuant to section 10.

The character of Hornsby's current NASD arbitration proceeding thus becomes relevant at this point. If the NASD claim is independent, then it may proceed because the Act does not apply. If, however, the NASD proceeding is properly characterized as an attempt to modify the AAA award, then it must be enjoined because the current arbitration encroaches upon an area governed exclusively by section 10 of the Act.

### 2. The NASD Proceeding

■ Hornsby claims that his attempt to arbitrate before the NASD is wholly independent from his previous arbitration. Prudential, on the other hand, asserts that Hornsby's NASD action is in substance a collateral attack on the original arbitration award, an attack necessitated because a direct attack under section 10 is time-barred. Prudential cites a number of cases in support of its position. Because the Seventh Circuit has not ruled upon this precise issue, these cases are instructive and a review of them helpful.

Prudential relies primarily on *Corey v. New York Stock Exchange*, 691 F.2d 1205 (6th Cir.1982). In *Corey*, an investor lost a NYSE arbitration against his former securities broker. One year later, the investor filed a lawsuit against the NYSE in state court alleging that the composition of the arbitration panel violated NYSE rules and therefore deprived him of a fair hearing. The investor characterized the action as independent from the arbitration proceedings and sought punitive damages. *Corey*, 691 F.2d at 1207–08. The Sixth Circuit disagreed, finding that the investor's claims of misconduct during the arbitration proceeding were within the scope of section 10, and should have been pursued timely under that section. *Id.* at 1212–13. Moreover, the court rejected the investor's argument that the two actions were independent, for it found that the harm claimed in the state suit was measured in terms of the impact that the misconduct had on the arbitration award. *Id.* at 1212. The mere presence of different defendants and a prayer for damages did not change the substance of his claim. *Id.* As a result, the court held that the investor's suit was "no more, in substance, than an impermissible collateral attack on the [arbitration] award itself." *Id.* at 1211–12.

The Ninth Circuit reached the same result in *Sander v. Weyerhaeuser Co.*, 966 F.2d 501 (9th Cir.1992). In *Sander*, an arbitration panel determined the price at which a stockholder's shares would be sold to a buyer. *Sander*, 966 F.2d at 502. Two years later, the stockholder filed suit in federal court claiming that the buyer had committed fraud

---

2. Section 10 of the Act provides, in relevant part: (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

 (1) Where the award was procured by corruption, fraud, or undue means.

3. Section 12 provides that notice of a motion to vacate, modify, or correct an arbitration award must be served upon the adverse party within three months after the award is filed or delivered. 9 U.S.C. § 12.

during the arbitration by suppressing a valuation report favorable to the stockholder. Because the stockholder's claim rested on fraud that occurred during the arbitration proceeding, a ground for vacation under section 10, the court held that the suit was an impermissible attempt to get a revaluation of his stock. *Id.* at 502–03.[4]

The Tenth Circuit employed the same analysis in *Foster v. Turley,* 808 F.2d 38 (10th Cir.1986). There, Foster demanded and lost an arbitration against Turley stemming from business dealings between the two. Foster later sued Turley in federal court for fraud and breach of contract, alleging that Turley had failed to disclose certain facts during the arbitration. *Foster,* 808 F.2d at 42. The court found that Foster's suit was a collateral attack on the arbitration award and held that the award could only be modified under section 10, the exclusive remedy for "conduct that taints an arbitration award within the Act's coverage." *Id.* at 41–42.

Finally, state courts have also adopted this analysis on facts substantially similar to Hornsby's. In *Pisciotta v. Shearson Lehman Bros.,* 629 A.2d 520 (D.C.1993), *cert. denied, Pisciotta v. Smith,* — U.S. —, 114 S.Ct. 690, 126 L.Ed.2d 657 (1994), investors charged Shearson Lehman and an individual broker with several improprieties relating to their accounts. NASD arbitration resulted in an award of $40,000 to the investors, which Shearson paid in full. *Pisciotta,* 629 A.2d at 521. Two years later, the investors filed a new arbitration claim before the NASD, alleging that Shearson fraudulently concealed information about its employee during the first arbitration. *Id.* Like Hornsby, the investors argued that they did not seek to disturb the original arbitration award, but rather sought damages for Shearson's independent acts of fraud during the arbitration process. *Id.* at 524. The court, however, rejected that argument, concluding that the "principal measure of the injury appellants allegedly suffered from Shearson's deception and unfair dealing was the arbitration award they would have received but for that conduct." *Id.* As a result, the court found the investor's second arbitration to be an impermissible attempt to augment and modify the relief granted by the first arbitration panel. *Id.*[5]

The reasoning of these cases is both persuasive and unsullied by contrary authority. Because the policies behind section 10 would be eviscerated if it were only an optional way to modify an arbitration award, an attempt to modify an award by a route or mechanism other than section 10 must be enjoined. Like the collateral actions in the cases above, Hornsby's attempt to arbitrate an "independent" fraud claim against Prudential is, in reality, an attempt to augment and modify the first arbitration award. His arguments to the contrary are belied by the NASD statement of claim. The NASD claim is premised entirely on the Prudential's fraudulent concealment of documents from the original arbitration panel, misconduct in the proceeding itself. Moreover, Hornsby defines his injury by the impact of Prudential's fraud on the original award. Paragraph 11 of Hornsby's NASD complaint states:

> It is respectfully contended, and it will be proven at the hearing of this matter, that

---

**4.** In *Harris Trust & Savings Bank v. Ellis,* 810 F.2d 700 (7th Cir.1987), a state court determined that the sale of stock in a trust would be "advantageous" to the trustee at $271 a share. Harris Trust later discovered that a more favorable valuation had not been disclosed to the court, and filed a suit under federal securities law and RICO to recover damages for the fraud. *Harris,* 810 F.2d at 702. Finding that the bank could not collaterally attack a state court judgment because of inadequate disclosure, *id.* at 706, the Seventh Circuit held that the bank's only recourse was to reopen the judgment pursuant to state law. *Id.*

**5.** Hornsby quotes *Pisciotta* for the proposition that "a new arbitration panel [can devise] reme-dies that take into account a party's fraud." *Id.* at 524. This quotation is out of context and misleading. The investors in *Pisciotta* argued that a second arbitration was necessary because a mere repeat of the first arbitration would not allow them to recoup costs, attorney's fees, and other damages accumulated as a result of the fraud in the first proceeding. The court responded that a direct attack remained the investors' only recourse, but assured them that, once the original award was vacated, nothing in the arbitration statute prevented "a new arbitration panel from devising remedies [to] take into account a party's [previous] fraud."

in the absence of the fraud complained of in this Statement of Claim, the award rendered would have exceeded $1,000,000, exclusive of punitive damages, which also should have been (and likely would have been) awarded, and all fees and expenses would have been assessed against respondents.

Paragraph 24 states:

By scheming and conspiring to prevent the disclosure of incriminating documents, which if presented to the AAA panel could have resulted in punitive damages and a more favorable calculation of actual damages, Prudential's executives ... were guilty of a scheme to defraud....

Finally, paragraph 45 states:

Had the Panel been made aware of the fraud perpetrated by respondents through perjury on Mr. Hornsby and on the Panel itself, it is respectfully submitted that different factors would have been employed in calculating damages and the award would have been as it should have been, substantially higher.

Prudential's purported fraud, then, injured Hornsby because it decreased his award in the first arbitration. Hornsby's NASD arbitration is an attempt to right that alleged injustice, to obtain the amount he would have received but for the fraudulent conduct. Hornsby's characterizations to the contrary do not change this conclusion. Although his injury may be real, section 10 is the only way to obtain redress for injuries suffered because of misconduct during an arbitration. Hornsby's NASD claim is, in substance, a collateral attack on the original arbitration, and it is precluded under section 10.

■ Prepared for this conclusion, Hornsby argues that he may prosecute his NASD claim because Prudential's fraudulent concealment prevented him from finding the smoking gun within the three month time limit for section 10 motions. Any other result, Hornsby argues, would reward parties for three months of successful post-award fraud. This issue is not ripe. The question

of whether section 10 may be equitably tolled is precisely that—a section 10 issue, and the proper procedure for advancing the tolling argument is in a section 10 motion. Hornsby has not filed a section 10 motion. Moreover, the tolling issue is premature even in light of the court's conclusions about the character of Hornsby's NASD proceeding. If the NASD proceeding is treated as a motion to modify akin to section 10, that motion is brought in the wrong forum. A motion for section 10 relief must be filed in federal court, not before a different arbitration organization. 9 U.S.C. § 10. As a result, the court expresses no opinion on Hornsby's equitable tolling argument except to note that it does not save his NASD claim.

■ Hornsby's final argument is that Prudential has waived objection to the NASD arbitration. Hornsby points to several letters from Prudential to the NASD objecting to the arbitration, and argues that Prudential has waived objection to the arbitration by participating in it. Reduced to its essentials, Hornsby's argument is that Prudential has waived objection by objecting.[6] Hornsby's argument is unpersuasive. The general rule is that a party cannot participate fully in an arbitration, await the result, and then if the result is unfavorable, challenge the arbitrators' jurisdiction of the issue. *See Jones Dairy Farm v. Local No. P–1236, United Food & Commercial Workers Int'l Union,* 760 F.2d 173, 175–76 (7th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985). But a party perfects an objection to arbitration if it makes that objection clear at the outset, even if it thereafter participates fully in a hearing. *Jones Dairy Farm,* 760 F.2d at 175; *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509, 514 n. 7 (7th Cir. 1992); *International Ass'n of Machinists No. 1777 v. Fansteel, Inc.,* 900 F.2d 1005, 1009 (7th Cir.), *cert. denied,* 498 U.S. 851, 111 S.Ct. 143, 112 L.Ed.2d 109 (1990). Thus, attempting to alert an arbitration panel that an issue should not be arbitrated does not compel a party to submit to the arbitration.

---

**6.** Hornsby may be trying to cross-apply rules of personal jurisdiction to Prudential's action. A party may be deemed to consent to personal jurisdiction if it makes a general appearance

before a court. The issue here, however, is not whether the arbitrators have personal jurisdiction over Prudential, but rather whether Hornsby's claims are a proper subject for arbitration.

Prudential's "participation" in the NASD arbitration, which the NASD has refused to conduct, has been limited to several motions objecting to the arbitration as an improper collateral attack on the AAA award. Aside from the fact that there has been nothing in which Prudential could participate, Prudential's letters of objection suffice to preserve its objection for review here.

Hornsby's attempt to arbitrate the fraud issue before the NASD is an impermissible collateral attack on his previous arbitration award. Hornsby is therefore enjoined from pursuing the fraud claims as independent actions before the NASD, any other arbitration forum, or any court.

### CONCLUSION

The motion of plaintiff Prudential Securities Incorporated for injunctive and declaratory relief is granted. Defendant Arthur Hornsby is enjoined from pursuing the NASD arbitration claim he filed on October 6, 1993. Hornsby's pending arbitration claim constitutes a collateral attack on the American Arbitration Association's January 1993 award to Hornsby in full settlement of his claims and, accordingly, does not comply with section 10 of the Federal Arbitration Act.

Hornsby's cross-motion for judgment on the pleadings and to compel arbitration is denied.