Harold L. SANDERS, Appellant,

v.

**MAPLE SPRINGS BAPTIST
CHURCH, Appellee.**

No. 97–CV–808.

District of Columbia Court of Appeals.

Argued May 28, 1998.
Decided Dec. 13, 2001.

Harold L. Sanders, pro se.

Edward J. Maginnis, with whom Gregory K. Wells, Largo, MD, was on the brief, for appellee.

Before TERRY, STEADMAN, and SCHWELB, Associate Judges.

PER CURIAM.

Appellant, Harold Sanders, brings this appeal from an order of the Superior Court denying his motion to vacate an arbitration award in favor of appellee, Maple Springs Baptist Church ("Maple Springs"). Relying on D.C.Code § 16–4311(a)(1) and (a)(2) (2001), Mr. Sanders contends that the award was procured by undue means, corruption, misconduct, and partiality on the part of the American Arbitration Association ("AAA"). We conclude that we need not decide whether the term "arbitrator" in D.C.Code § 16–4311(a)(2) refers only to the individual appointed to resolve a dispute or, in addition, to the administrative personnel of the AAA. On the question of whether there is sufficient evidence in the record requiring the award to be set aside under D.C.Code § 16–4311(a)(1), we hold that there is not, and thus we affirm the decision of the trial court.

I

An arbitrator's decision found Mr. Sanders liable to Maple Springs in the amount of $12,933.05. In the trial court Mr. Sanders moved to vacate that decision on three grounds, arguing (1) that the AAA did not afford him an opportunity to review the qualifications of the candidates for arbitrator; (2) that the AAA failed to transmit his amended claim to the arbitrator; and (3) that the AAA extended "special favors" to, and engaged in *ex parte* communications with, Maple Springs. Maple Springs, in turn, filed a motion to confirm the award. In a single order, the trial court denied Sanders' motion to vacate because he had

"failed to point to any specific facts of record to show evident partiality of the arbitrator or any other statutory grounds" and granted Maple Springs' motion to confirm the award, thus entering judgment against Sanders in the amount of $12,933.05.

The dispute in this case arose out of a contract between the parties in which Mr. Sanders, an architect, was hired by Maple Springs to assist in the design and construction of an expansion of the church building. The contract, written on a standard American Institute of Architects form, contained the following arbitration clause:

> Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

On December 1, 1995, Mr. Sanders filed a demand for arbitration claiming $49,378.05 in damages. Maple Springs responded with a counter-demand for $500,000.

### A. The appointment of an arbitrator

Rule 13 of the American Arbitration Association Rules ("AAA Rules") establishes specific procedures for the AAA to follow when appointing an arbitrator to resolve a dispute. Immediately after a request for arbitration is filed, the AAA must send "simultaneously to each party" a list of proposed arbitrators. If any of the proposed arbitrators is a member of the AAA's national panel, Commentary C to Rule 13 states that the AAA will also furnish to each party a biographical sketch containing "information on the arbitrators' current employment, employment history, areas of technical expertise, educational background, practical career experiences, and professional association memberships." In addition, any party can receive further information on prospective arbitrators from any AAA regional office. After the AAA submits its list of suggested arbitrators to the parties, they have ten days within which to strike any names to which they object, rank the remaining names in order of preference, and return the list to the AAA. The AAA then chooses an arbitrator in accordance with the parties' stated order of preference.

It is clear from the record in this case that the AAA did not follow its own procedures in the selection process. First, the AAA unilaterally appointed Julian Hoffar as arbitrator of the dispute without sending either party a list of proposed candidates. Mr. Sanders objected to the appointment, and Hoffar subsequently recused himself as arbitrator. Second, after the AAA properly sent Sanders and Maple Springs a list of potential arbitrators on February 10, 1996, Mr. Sanders requested additional information on each nominee from the AAA's regional office in the District of Columbia ("the D.C. Office").[1] The AAA collected the information,[2] but did not send it to Mr. Sanders

---

1. Sanders asked for "detailed résumés of each nominee so that an informed evaluation may be made as to their suitability and acceptability." Maple Springs maintains that the AAA Rules do not provide for "detailed résumés" and that it is within the discretion of the AAA to provide additional information on potential arbitrators. Commentary C to AAA Rule 13 plainly states, however, that "[a]dditional information on arbitrators can be obtained by contacting an AAA regional office." This language appears to give any party to an arbitration the right to obtain more detailed information about arbitrator candidates.

2. The AAA apparently notified the potential arbitrators of Mr. Sanders' request, and at

until February 20.[3] He did not receive it until February 21, the day after he was required to return his list of preferences to the AAA. Sometime in late February (the exact date is not clear from the record), the AAA selected Gerald O'Brien to arbitrate the dispute between Mr. Sanders and Maple Springs.

Although Sanders initially accepted Mr. O'Brien as a potential arbitrator,[4] he was disturbed by the failure of the AAA to provide in a timely manner the additional information he had sought. After numerous requests to meet with the Administrative Supervisor and the Director of the D.C. Office,[5] he formally challenged Mr. O'Brien as an arbitrator on April 12, 1996, and demanded a new selection process. Sanders listed numerous alleged improprieties as the basis for his challenge:

1. [An AAA representative] attempted to coerce me during a telephone call he made to have me accept a schedule he implied was favorable to [Maple Springs]....

2.... [Julian Hoffar's] resume was transmitted to me in a manner that caused me to receive it only a few hours before a ... scheduled conference call/hearing with [Mr. Hoffar].

3. [The Case Administrator's] "after the fact" transmittal of resumes I requested of candidates for arbitrator that was not received by me until after the strike-list return deadline. Circumstances support my contention that my opposition received and processed these resumes in a manner that afforded them an unfair advantage.[6]

least one of them, Gerald O'Brien, responded with a letter detailing his experience in construction law. His letter stated in part:
You have called and asked for more detailed information about my experience in construction law.... I began private practice in Maryland in 1975. Almost immediately, I began working on construction disputes because the partners in my firm knew that I had a degree in mechanical engineering and an interest in construction. Since then, I have been constantly involved in construction litigation. I have represented owners, designers, general contractors, subcontractors and suppliers. For two years I was of counsel to a firm in Washington, D.C., through which I represented architects and engineers.... I have since litigated on behalf of and against architects and engineers.... About 50–60% of my practice involves construction litigation, and I have had an "av" rating from Martindale & Hubbell for about 10 years. I have acted as an arbitrator, either alone or in a panel, in approximately 35 cases. I have also been counsel in about 20 arbitration matters.

3. The information was enclosed with a letter dated February 16, 1996, apologizing for the delay and explaining that "it took some time to get this information from the arbitrators."

4. Sanders ranked O'Brien third on his list of seven acceptable candidates.

5. Mr. Sanders requested a meeting with the Administrative Supervisor and the Director in a letter dated March 5, 1996. After the Administrative Supervisor spoke to him on March 7 and 8, she notified him that neither she nor the Director would be available to meet with him. On March 8 Mr. Sanders sent the Director a letter complaining of that refusal and reiterating his belief that the AAA was not acting impartially. On March 25 he sent another letter to the Director, renewing his request for a meeting and stating that a telephone conversation with Maple Springs "revealed information that makes the conclusion that [Maple Springs received an unfair advantage] inescapable." On April 12, 1996, Sanders finally met with representatives of the AAA; however, he considered the meeting "fruitless" because neither the Case Administrator nor the Director was in attendance.

6. Apparently, a conversation with counsel for Maple Springs led Mr. Sanders to believe that the AAA had sent the biographical data concerning the potential arbitrators to Maple Springs within the time prescribed by the AAA Rules. There is nothing in the record, however, to suggest that Maple Springs received this information before Mr. Sanders did.

4. The refusal of [the Administrative Supervisor and the Director] to meet with me to resolve this unfair advantage issue.

5. The passage of four (4) weeks from my initial request ... to the time I received a superficial meeting with [two AAA representatives].

When the AAA did not respond to Sanders' challenge to O'Brien, Sanders sent four additional letters to the AAA in May and June 1996, all alleging that the AAA was biased against him. On this appeal, Mr. Sanders asserts that if he had had the additional information about Mr. O'Brien, he would have stricken him as "unsuitable" to hear the case.

## B. *The pre-hearing conference*

AAA Rule 10 provides that an administrative conference will be scheduled "in appropriate cases" at the request of any party or in the discretion of the AAA. Maple Springs apparently did not desire a pre-hearing conference and so informed the AAA. However, Mr. Sanders did request one, so the AAA scheduled a telephone conference between both parties and Mr. O'Brien for July 2, 1996. In a letter dated June 26, 1996, counsel for Maple Springs notified Sanders and the AAA that he would not be available at that time. Two days later, Mr. Sanders wrote a letter to the AAA complaining about the postponement and demanding additional time between the rescheduled conference call and the hearing. The AAA subsequently set a new date for the conference. On appeal, Sanders contends that the AAA extended an "unfair special favor" to Maple Springs by rescheduling the conference too close to the hearing date and that he was therefore unable to prepare adequately for the hearing. In addition, he asserts that Maple Springs and the AAA engaged in "clandestine ex parte discussions" by discussing whether Maple Springs wanted a pre-hearing conference and in setting a new date for it.

## C. *The hearing*

At some point prior to the arbitration hearing, Mr. Sanders filed an amended claim.[7] During the hearing, Mr. O'Brien observed that his file did not include the amended claim, apparently because the AAA staff had failed to update the file. It is uncontested, however, that Mr. O'Brien received the relevant document before issuing his decision. On appeal, Mr. Sanders contends that the failure to update Mr. O'Brien's file shows bias and misconduct on the part of the AAA.

After hearing five days of testimony in August 1996, Mr. O'Brien, on September 18, 1996, found Mr. Sanders liable for breach of contract and awarded Maple Springs $12,933.05.

## II

■ In ruling on a challenge to an arbitration award, this court must determine whether the trial court correctly applied the standards set forth in the District of Columbia Arbitration Act, D.C.Code §§ 16–4301 *et seq.* (2001), to the facts of the case. *Pisciotta v. Shearson Lehman Brothers, Inc.,* 629 A.2d 520, 522 (D.C. 1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 657 (1994); *Capozio v. American Arbitration Ass'n,* 490 A.2d 611,

---

7. AAA Rule 8 prescribes the procedure for amending a claim. Before the appointment of an arbitrator, a party need only file the amended claim with the AAA and send a copy to the opposing party; however, after an arbitrator has been appointed, new or different claims may be submitted only with the consent of the arbitrator. The record before us does not indicate when Mr. Sanders filed his amended claim, but there is no contention that he acted contrary to the AAA Rules.

614 (D.C.1985). The Arbitration Act provides that an award must be set aside, on application of a party, if:

(1) The award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor ... or

(5) There was no arbitration agreement....

D.C.Code § 16–4311(a). Mr. Sanders argues that paragraphs (1) and (2) were violated by the AAA's failure to provide him in a timely manner with detailed biographies of the potential arbitrators and to transmit his amended claim to Mr. O'Brien, as well as by *ex parte* communications between the AAA and Maple Springs and "special favors" granted to Maple Springs. The trial court found no basis for vacating the award under either paragraph (1) or paragraph (2).

### A. *"Corruption, fraud, or other undue means"*

■ Under D.C.Code § 16–4311(a)(1), a court must vacate an award that was "procured by corruption, fraud, or other undue means." [8] We conclude that the record does · not support a vacatur on these grounds. Although there were administrative problems with the arbitration, there is nothing in the record to suggest that the final decision of the arbitrator was the result of "corruption, fraud, or other undue means." [9]

Mr. Sanders strenuously asserts that the AAA engaged in "clandestine ex parte discussions" with Maple Springs and granted Maple Springs "special favors." He complains, in particular, that Maple Springs and AAA case administrators had *ex parte* discussions about the pre-hearing conference.[10] Commentary G to AAA Rule 29, however, specifically authorizes such discussions, stating that "[i]n order to maintain the integrity of the arbitration process," parties should not have direct communication with the "neutral arbitrator" except at the arbitration hearing itself; instead, they should use the case administrator "as the funnel through which all communications must pass." Thus the communication between AAA administrators and Maple Springs of which Mr. Sanders complains was consistent with the AAA Rules, and fails to support Mr. Sanders' claim of corruption or fraud. *See also Capozio,* 490 A.2d at 618–619 (interpreting AAA Rules).

■ Mr. Sanders also argues that the AAA granted certain "special favors" to Maple Springs by delaying the arbitration process during settlement discussions and by failing to schedule a pre-hearing conference until he demanded one. However, AAA Rule 39 provides that either the AAA

---

**8.** Section 16–4311(a)(1) "has· been held to cover fraudulent conduct that transpired during the arbitration proceedings." *Thompson v. Lee,* 589 A.2d 406, 412 n. 7 (D.C.1991); *accord, Pisciotta,* 629 A.2d at 522.

**9.** We assume for present purposes that this subsection is not limited to actions by the parties themselves and that the term "undue means" is broad enough to cover the alleged conduct of the AAA staff. *But see American Postal Workers Union v. United States Postal Service,* 311 U.S.App.D.C. 210, 52 F.3d 359 (1995).

**10.** Mr. Sanders does not assert, however, nor does the record show, that Mr. O'Brien engaged in *ex parte* communications with anyone.

or the arbitrator "may for good cause extend any period of time established by these rules." Settlement discussions would surely constitute good cause for postponing a hearing, at least in the absence of unusual circumstances which are not shown on this record. In addition, AAA Rule 10 provides that pre-hearing administrative conferences are not scheduled unless a party requests one or unless the AAA, in its discretion, decides to hold one. *See Capozio,* 490 A.2d at 616 n. 7 ("the scheduling of a pre-hearing conference is discretionary with the AAA"). The AAA properly scheduled such a conference when Mr. Sanders asked for one; under Rule 10, it was under no obligation to do so earlier.

■ We also find no merit in Mr. Sanders' contention that the errors by AAA staff—its failure to provide him timely biographical information about potential arbitrators and its failure to forward his amended claim to the arbitrator—require us to hold that the arbitrator's award was the result of corruption, fraud, or other undue means. First, there is nothing in the record indicating any sort of bad faith on the part of the AAA or its staff; at worst, it appears that the AAA simply failed to follow its own procedures and failed to explain clearly to Mr. Sanders what it was doing and why. Second, there is no evidence that these administrative errors affected in any way the eventual award in favor of Maple Springs or otherwise prejudiced Mr. Sanders' case. Mr. Sanders asserts that he would have struck Mr. O'Brien if the AAA had sent him the biographical data on time. However, at the time that he initially found O'Brien to be a suitable candidate for arbitrator, ranking him third out of seven, Mr. Sanders already had his résumé and biographical information. There is nothing in the additional information that he eventually did receive (see note 2, *supra* ) to suggest that O'Brien might have been the wrong man for the job, and even now Mr. Sanders does not explain why he would have struck Mr. O'Brien from the list after he had earlier found him acceptable. *See Cellular Radio Corp. v. OKI America, Inc.,* 664 A.2d 357, 361 n. 6 (D.C.1995) (to demonstrate partiality by an arbitrator, "it is insufficient merely to show that a party would have lodged an unreasonable objection to an arbitrator had there been fuller disclosure"). Likewise, the AAA's failure to forward Mr. Sanders' amended claim to Mr. O'Brien did not affect the final award because it is undisputed that Mr. O'Brien received the amended claim before he made his decision.

### B. *Partiality, corruption, or prejudicial misconduct*

■ Even if we assume, without deciding, that the AAA staff could be deemed "arbitrators" within the meaning of D.C.Code § 16–4311(a)(2), Mr. Sanders has not demonstrated "evident partiality," "corruption," or "misconduct" that would require setting aside the arbitration award. As we have discussed, all of Mr. Sanders' allegations except for the one about the delay in receiving biographical information concerned conduct that was either consistent with AAA rules or harmless. As for the biographical information, Mr. Sanders has not shown that Mr. O'Brien was biased or otherwise unfit to serve as an arbitrator. *See Cellular Radio Corp.,* 664 A.2d at 361 n. 6; *see also Remmey v. PaineWebber, Inc.,* 32 F.3d 143, 148 (4th Cir.1994) (party challenging arbitrator's failure to disclose that he had once been fined by arbitral tribunal must show that this newly discovered information "affected [the arbitrator's] impartiality, thereby yielding an impermissible award"). Moreover, just as the AAA's action did not constitute "undue means" in procuring the

award, for essentially the same reasons it did not amount to misconduct prejudicing Mr. Sanders' rights. We therefore find no error in the trial court's refusal to set aside the arbitration award under D.C.Code § 16–4311(a)(2).

## III

The order of the trial court confirming the arbitrator's award of $12,933.05 to Maple Springs is

*Affirmed.*

TERRY, Associate Judge, concurring.

I agree that the trial court's order should be affirmed, and I join in parts I, II A, and III of the court's opinion. With respect to part II B, however, I would go further and expressly decide the question of who is an "arbitrator." That question is squarely presented in this case by Mr. Sanders, and because it may well recur in a future case, I think we should answer it now.

Mr. Sanders does not challenge any acts or omissions of Mr. O'Brien, the person who actually heard his case; rather, he contends that the misconduct of the AAA and its staff invalidates the arbitration award under D.C.Code § 16–4311(a)(2). He maintains that we should read the word "arbitrator" in section 16–4311(a)(2), quoted at page 125 of the court's opinion, to include the administrative personnel of the AAA as well as Mr. O'Brien. According to Mr. Sanders, the general term "arbitrator" incorporates two categories of persons with separate functions: "hearing arbitrators," who decide disputes, and "ad-

ministrative arbitrators," who conduct all the other administrative duties of the organization under whose auspices the arbitration is conducted. We should therefore decide whether the word "arbitrator" in D.C.Code § 16–4311(a)(2) refers to the AAA as a whole or solely to the individual appointed to arbitrate a dispute, in this instance Mr. O'Brien.

It is well established that courts must interpret statutes "according to their ordinary sense and with the meaning commonly attributed to them." *Davis v. United States,* 397 A.2d 951, 956 (D.C.1979); *accord, e.g., Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc). Both the AAA Rules and the relevant case law suggest that Mr. Sanders' reading of the statute is not consistent with the ordinary, common-sense meaning of "arbitrator."

First, the AAA Rules make clear that the "arbitrator" is only the person deciding the case, not the entire AAA.[1] Rule 12 defines the term "arbitrator" as "the arbitration panel, whether composed of one or more arbitrators and whether the arbitrators are neutral or party-appointed." On the other hand, Commentary A to Rule 3 states that the AAA staff members who manage the administrative details of a dispute are called "case administrators"—not arbitrators. All of the AAA Rules are consistent with these definitions, differentiating between the AAA (or its administrative staff) and the person appointed to resolve the dispute; only the latter is referred to as an "arbitrator." For example, Rule 31 states that "[t]he arbitrator shall

---

1. AAA Rule 1 provides that the Rules are incorporated into the parties' contract:

    The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association. . . .

Because Mr. Sanders agreed to be bound by them, we may appropriately consider the way in which the AAA Rules define "arbitrator." *See Cellular Radio Corp. v. OKI America, Inc.,* 664 A.2d 357, 359–360 n. 3 (D.C.1995).

be the judge of the relevance and materiality of the evidence offered," and Rule 39 provides that "[t]he AAA *or* the arbitrator may for good cause extend any period of time established by these rules" (emphasis added).

Moreover, this court has never applied D.C.Code § 16–4311(a)(2) to the entire AAA, and our decisions interpreting the statute at least suggest that the "arbitrator" is the person who decides the dispute, and no one else. For example, in *Celtech, Inc. v. Broumand,* 584 A.2d 1257, 1258 (D.C.1991), we quoted with apparent approval the following language from *Burchell v. Marsh,* 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854): "Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal."[2] In *Cellular Radio Corp. v. OKI America, Inc.,* 664 A.2d 357, 363 (D.C.1995), we said that "[t]he arbitrator is the judge of the relevancy of evidence." In light of these precedents and the plain language of the AAA Rules, I would hold expressly that the term "arbitrator" refers exclusively to the person or persons appointed to decide the dispute. In this case that was Mr. O'Brien. Because Mr. Sanders failed to allege any partiality, impropriety, or other wrongdoing on Mr. O'Brien's part, the trial court was correct when it ruled that there were no grounds to vacate the award under D.C.Code § 16–4311(a)(2).

[2] This language from *Burchell* was quoted in the course of a general discussion of the scope of judicial review of an arbitration award. The issue raised here by Mr. Sanders—whether the AAA and its staff may be included in the definition of the word "arbitrator"—was not presented in *Celtech,* which was decided on other grounds.