IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GULF LNG ENERGY, LLC and GULF LNG PIPELINE, LLC, | § § § | No. 22, 2020 |
| Plaintiffs Below, Appellants, | § § § § | Court Below:  Court of Chancery of the State of Delaware |
| v. | § § | |
| ENI USA GAS MARKETING LLC, | § | C.A. No. 2019-0460 |
| Defendant Below, Appellee. | § § § § | |

Submitted:  September 9, 2020
Decided:    November 17, 2020

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR** and **MONTGOMERY-REEVES**, Justices, constituting the Court *en Banc*.

Upon appeal from the Court of Chancery.  **AFFIRMED IN PART, REVERSED IN PART.**

Bradley R. Aronstam, Esquire, S. Michael Sirkin, Esquire, and R. Garrett Rice, Esquire, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; Joseph S. Allerhand, Esquire (*argued*), Seth Goodchild, Esquire, and Tania C. Matsuoka, Esquire, WEIL, GOTSHAL & MANGES LLP, New York, New York; Mark W. Friedman, Esquire, William H. Taft V, Esquire, Carl Micarelli, Esquire, and Lisa Wang Lachowicz, Esquire, DEBEVOISE & PLIMPTON LLP, New York, New York; *Attorneys for Plaintiffs-Appellants Gulf LNG Energy, LLC and Gulf LNG Pipeline, LLC.*

Joseph B. Cicero, Esquire, and Gregory E. Stuhlman, Esquire, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; Joseph J. LoBue, Esquire (*argued*), and Helene Gogadze, Esquire, SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, Washington, D.C., *Attorneys for Defendant-Appellee Eni USA Gas Marketing LLC.*

**SEITZ**, Chief Justice, for the Majority:

In this appeal and cross-appeal, we address two primary issues arising out of a commercial agreement between the parties—first, whether the Court of Chancery had jurisdiction to enjoin a second arbitration that collaterally attacks a prior arbitration award; and second, whether the second arbitration in fact collaterally attacked the prior arbitration award.

We agree with the Court of Chancery that it had jurisdiction to enjoin a collateral attack on a prior arbitration award. The parties agreed that the Federal Arbitration Act ("FAA") governed their dispute. Under the FAA, the courts have the exclusive power to review and enforce arbitration awards. A party cannot escape the FAA's time-limited and exclusive review procedure by filing a follow-on arbitration attacking the outcome of the prior arbitration.

On the second issue, we affirm in part and reverse in part the court's ruling that some claims but not others in the second arbitration collaterally attacked the award in the prior arbitration. A collateral attack on the first award does not depend on the *res judicata* or collateral estoppel effect of claims raised or decided in the prior arbitration. Rather, the question is whether the claimant alleges irregularities in the prior arbitration or seeks to rectify the harm it suffered—issues that could have been reviewed through the FAA post-award procedure. The Court of Chancery should have enjoined all claims in the second arbitration between the parties because

2

the admitted goal of the follow-on arbitration was to raise irregularities and revisit the financial award in the first arbitration. Thus, we affirm in part and reverse in part the Court of Chancery's judgment.

## I.

## A.

Gulf LNG Energy, LLC, a Delaware limited liability company, owns and operates a liquefied natural gas ("LNG") terminal in Mississippi (the "Pascagoula Facility" or "Facility").[1] The Facility unloads vessel-imported LNG into the United States. Gulf LNG Pipeline, LLC (collectively with Gulf LNG Energy, LLC, "Gulf"), also a Delaware entity, owns and operates a five-mile long pipeline that distributes LNG from the Pascagoula Facility to downstream inland pipelines. Eni USA Gas Marketing LLC ("Eni"), a Delaware entity, markets natural gas products and offers related services in the United States.[2]

On December 8, 2007, Gulf and Eni entered into a Terminal Use Agreement (the "TUA"), whereby Gulf would construct the Pascagoula Facility, and Eni would use the Facility to receive, store, regasify, and deliver imported LNG to downstream businesses.[3] Under the TUA, Eni agreed to pay Gulf fees for using the Facility,

---

[1] Unless otherwise stated, the facts are drawn from the Court of Chancery's opinion, *Gulf LNG Energy, LLC v. Eni USA Gas Marketing LLC*, C.A. No. 2019-0460-AGB, 2019 WL 7288767 (Del. Ch. Dec. 30, 2019).

[2] Eni is an indirect subsidiary of Eni S.p.A, an Italian corporation.

[3] The TUA began on December 8, 2007, and ran for twenty years.

including monthly Reservation Fees and Operating Fees. The following TUA

Articles are relevant to the dispute:

Article 22.4(a) – Gulf covenanted to "observe and comply with [Article 22.2(f)] in all respects;"[4]

Article 22.2(f) – Gulf's "Constitutive Documents" will contain provisions that "limit[] [Gulf's] purpose and object to the ownership, design, financing, construction, equipping, testing, commissioning, operation, maintenance, repair, decommissioning and removal of the [Pascagoula] Facility . . ."[5]

Article 22.4(e) – Gulf is entitled to "reasonable consideration" for "all transactions" with an Affiliate;[6]

Article 18.1(a)(vi) – Eni can terminate the TUA early if Gulf fails to perform obligations under Article 22.4(a) or 22.4(e) for a period of more than fifteen consecutive days;[7]

Article 20.1(a) – the parties agreed that "[a]ny Dispute . . . shall be exclusively and definitively resolved through final and binding arbitration, it being the intention of the Parties that this is a broad form arbitration agreement designed to encompass all possible disputes."[8] "Dispute" is defined as "any dispute, controversy or claim (of any and every kind or type, whether based on contract, tort, statute, regulation, or otherwise) arising out of, relating to, or connected with this Agreement, including . . . any dispute over arbitrability or jurisdiction"[9] and

Articles § 20.1(h), (o) – arbitral awards "shall be final and binding"[10] and the parties "waive any right to appeal from or challenge any arbitral decision or award, or to oppose enforcement of any such

---

[4] App. to Opening Br. at A257 (TUA Art. 22.4(a)).
[5] *Id*. at A256 (TUA Art. 22.2(f)(i)).
[6] *Id*. at A258 (TUA Art. 22.4(e)).
[7] *Id*. at A247 (TUA Art. 18.1(a)(ix)).
[8] *Id*. at A250 (TUA Art. 20.1(a)).
[9] *Id*. at A176 (TUA Art. 1(57)).
[10] *Id*. at 251 (TUA Art. 20.1(h)).

decision or award before a court or any governmental authority, except with respect to the limited grounds for modification or non-enforcement provided by any applicable arbitration statute or treaty"—in this case the Federal Arbitration Act.[11]

On March 2, 2016, Eni filed for arbitration (the "First Arbitration") with the American Arbitration Association, International Centre for Dispute Resolution ("ICDR"). In its arbitration demand, Eni alleged that the United States' natural gas market had undergone a "radical change" due to "unforeseen, vast new production and supply of shale gas in the United States [that] made import of LNG into the United States economically irrational and unsustainable."[12] As Eni alleged in support of declaratory relief, (i) the essential purpose of the TUA had been frustrated and thus terminated because of "fundamental and unforeseeable change in the United States natural gas/LNG market," and (ii) a declaration that Eni could terminate the TUA at any time under Article 18.1 because Gulf breached warranties and covenants "in at least Articles 22.4(a) and 22.4(e)."[13] Specifically, Eni contended that Gulf violated Article 22.4(a) of the TUA by filing an application to

---

[11] *Id*. at A252 (TUA Art. 20.1(o)). Because the parties did not designate the Delaware Uniform Arbitration Act, the FAA governs their arbitration. 10 *Del. C*. § 5702(a) (requiring an arbitration agreement to "specifically referenc[e] the Delaware Uniform Arbitration Act [§ 5701 et seq. of this title] and the parties' desire to have it apply to their agreement . . . ."); *Id*. § 5702(c) ("Unless an arbitration agreement complies with the standard set forth in subsection (a) of this section for applicability of the Delaware Uniform Arbitration Act, any application to the Court of Chancery to enjoin or stay an arbitration, obtain order requiring arbitration, or to vacate or enforce an arbitrator's award shall be decided . . . in conformity with the Federal Arbitration Act . . . .").
[12] *Gulf*, 2019 WL 7288767, at *2 (alteration in original).
[13] *Id*.

5

modify the pipeline to "accommodate the planned liquefaction and export activities," contrary to Article 22.4(a)'s representation that Gulf's "purpose and object" was limited "strictly to importation and regasification of LNG."[14]

On June 29, 2018, the arbitration tribunal (the "First Tribunal") issued its Final Award, finding that "the principal purpose of the TUA has been substantially frustrated" and declaring the TUA terminated as of March 1, 2016.[15] The First Tribunal ordered Eni to pay Gulf $462,199,000 as "just compensation . . . for the value that their partial performance of the TUA conferred upon Eni."[16] In language we will consider in more detail later in this opinion, the arbitrators also stated that Eni's breach of contract claim against Gulf was rendered "academic and deserves no further consideration" in light of their frustration of purpose finding.[17]

B.

On September 28, 2018, Gulf sued Eni S.p.A.—Eni's indirect parent company—in New York state court under the guarantee agreement between Gulf and Eni S.p.A. (the "Guarantee Agreement"). Gulf argued that Eni S.p.A. owed "as much as approximately $900,000,000 in guaranteed obligations" for Reservation and Operating Fees for the Pascagoula Facility running from the date of the First

---

[14] *Id.*
[15] *Id.* at *3.
[16] *Id.*
[17] *Id.*

6

Arbitration's Final Award until the end of the TUA's twenty-year term.[18]  In the New York litigation, Gulf claimed that, in the Guarantee Agreement, Eni S.p.A. "specifically waived, 'to the extent permitted by law, any release, discharge, reduction or limitation of or with respect to any sums owing by [Eni] or other liability of [Eni] to [Gulf].'"[19]

On December 12, 2018, Eni S.p.A. filed its answer and three counterclaims, alleging that the Guarantee Agreement was terminated by Gulf's "numerous and widespread breaches of the TUA and related agreements."[20]  Eni S.p.A. argued that Gulf's breaches of Article 22 of the TUA "caused [Eni] substantial injury for which Eni S.p.A. seeks damages and other relief."[21]

Around the time that Gulf initiated the New York litigation, Gulf brought suit in the Delaware Court of Chancery seeking to confirm the Final Award.  Eni filed an answer and asserted a counterclaim asking the Court of Chancery to enter judgment in Eni's favor by "confirming the Final Award in its entirety."[22]  Gulf and Eni each moved for judgment on the pleadings.  On February 1, 2019, the court

---

[18] *Id.*
[19] *Id.* (alteration in original).
[20] *Id.* (alteration in original).
[21] *Id.*
[22] *Id.*

entered a final judgment confirming the arbitration award in favor of Gulf against Eni for $371,577,849.[23]

C.

On June 3, 2019, following confirmation of the First Award, Eni filed a second notice of arbitration (the "Second Arbitration"). Eni asserted two counts for declaratory relief and damages for Gulf's alleged breach of the TUA "by engaging in LNG liquefaction- and export-related activities in direct contravention of the express terms of at least Articles 22.4(a) and 22.4(e) of the TUA" and a third claim for negligent misrepresentation seeking "declaratory and other relief, in the form of damages and/or restitution . . . as a result of Gulf's wrongful conduct" before the First Tribunal.[24] On June 17, 2019, Gulf responded with this action in the Court of Chancery under the FAA and 10 *Del. C.* §§ 5702, 5703(b), seeking (i) a permanent injunction staying the Second Arbitration and (ii) a "declaratory judgment that Eni . . . is barred from maintaining or pursuing the Second Arbitration."[25]

Gulf moved for judgment on the pleadings to enjoin Eni "from taking any further steps or actions in the Second Arbitration other than to request that the

---

[23] Eni paid the judgment in full. The Court of Chancery's award in the confirmation proceeding was $371,577,849. It was less than the original arbitration award of $418,649,000 because amounts that Eni paid to Gulf were credited after the First Tribunal corrected its opinion. App. to Opening Br. at A286–89 (Cross-Motions for Judgment on the Pleadings Hr'g, *Gulf LNG Energy, LLC v. ENI USA Marketing LLC*, 2018-0700-AGB (Del. Ch. Feb. 1, 2019) (TRANSCRIPT)).
[24] *Gulf*, 2019 WL 7288767, at *4.
[25] *Id.*

8

Second Arbitration be discontinued and dismissed at Eni's cost."[26] On December 30, 2019, the Court of Chancery ruled that (1) Eni was permanently enjoined from pursuing its negligent misrepresentation claim in the Second Arbitration; and (2) judgment was entered in favor of Eni on Gulf's declaratory and injunctive relief claims relating to Eni's breach of contract claim.[27]

In its decision, the Court of Chancery rejected Eni's jurisdictional arguments. First, the court reviewed a long line of cases enjoining collateral attacks on arbitration awards. As noted by the Chancellor, these decisions hold that the FAA is the exclusive review process once an arbitration award issues. Collateral attacks in follow-on proceedings are improper end runs around the FAA that undermine the FAA's goal of speedy and final resolution of disputes.

Second, the Court of Chancery found that Eni's negligent misrepresentation claim was an improper collateral attack on the Final Award. As the court held, Eni's "ultimate objective in the Second Arbitration" was to recapture "decommissioning costs it was required to pay to satisfy the Final Award."[28] The court likewise found that Eni was also improperly seeking to "claw back some or all of the damages that were awarded to Gulf in an arbitration proceeding that is supposed to be

---

[26] *Id.*
[27] *Gulf LNG Energy, LLC v. Eni USA Gas Marketing LLC*, 2020 WL 136834, at *1 (Del. Ch. Jan. 10, 2020) (ORDER).
[28] *Gulf*, 2019 WL 7288767, at *11.

concluded."[29]  According to the court, "[i]f Eni had its way, for all practical purposes, the finality of the Final Award would be undone and the monetary recovery Gulf obtained in the First Arbitration would be nullified."[30]  This result would be "the epitome of a collateral attack."[31]  The court also found that "the essence of Eni's negligent misrepresentation claim is that Gulf procured damages in the First Arbitration by engaging in misconduct that tainted the Final Award."[32]  Because "Eni made no effort to seek to vacate the Final Award on this ground," Eni had "no right to bring a collateral attack now to 'challenge the very wrongs affecting the award for which review is provided under section 10 of the Arbitration Act.'"[33]

Finally, the Court of Chancery found that Eni's breach of contract claims did not collaterally attack the Final Award.  As the court held, "the First Tribunal never ruled on [the contract claim], which it found to be academic in view of its ruling that the TUA had been terminated for frustration of purpose . . . ."[34]  According to the court, "given that the First Tribunal never reached the merits of the claim for

---

[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* (quoting *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1213 (6th Cir. 1982)); *see also id.* at *12 ("As a substantive matter, however, Eni's misrepresentation claim is a transparent tactic to claw back the damages it paid Gulf under the Judgment for the purpose of reducing and potentially nullifying the substance of the damages award that Gulf obtained as a result of the First Arbitration.").
[34] *Id.* at *12.

breaches of Articles 22.4(a) and 22.4(e) of the TUA and never granted any relief based on that claim, it cannot be said that Eni's contract claim in the Second Arbitration seeks to rectify 'harm' allegedly suffered in the First Arbitration."[35] Thus, the court concluded that "it is up to the tribunal in the Second Arbitration to determine whether the contract claim is arbitrable and, if so, whether that claim would be precluded based on the First Arbitration."[36]

D.

On appeal, Gulf argues that the Court of Chancery erred when it refused to enjoin all claims in the Second Arbitration. According to Gulf, the court's focus should have been on the harm alleged and the relief sought in the Second Arbitration rather than the nature of the claims or whether they were actually resolved. Because Eni sought in the Second Arbitration to recoup its losses in the First Arbitration, Gulf claims that the court should have enjoined the Second Arbitration as an improper collateral attack on the Final Award.

Eni cross-appealed, arguing that the Court of Chancery lacked jurisdiction to enjoin the Second Arbitration in light of the parties' broad arbitration clause sending all disputes to an arbitrator rather than the court. And, even if the court had jurisdiction, Eni contends that the court erred by enjoining Eni's negligent

---

[35] *Id.*
[36] *Id.*

11

misrepresentation claim as a collateral attack on the Final Award. According to Eni, the negligent misrepresentation claim is independent from the Final Award. Rather than seeking to claw back portions of the Final Award, Eni maintains, its negligent misrepresentation claim implicates the parties' broader transaction under the Guarantee Agreement as raised in the litigation in New York.

We review the Court of Chancery's permanent injunction order for an abuse of discretion. Embedded legal conclusions are reviewed *de novo*.[37]

## II.

## A.

We address jurisdiction first. In 1925 Congress enacted the FAA, reflecting "a liberal policy favoring arbitration" as well as the "fundamental principle that arbitration is a matter of contract."[38] "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[39] Depending on the language of the agreement, some threshold questions

---

[37] *Heartland Payment Sys., LLC v. Inteam Assocs., LLC*, 171 A.3d 544, 570 (Del. 2017); *N. River Ins. Co. v. Mine Safety Appliances Co.*, 105 A.3d 369, 380–81 (Del. 2014).

[38] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

[39] *Concepcion*, 563 U.S. at 344 (alteration in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

are presumptively for the courts to decide,[40] and others are presumptively for the arbitrator to decide.[41] According to the United States Supreme Court, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."[42]

Once an arbitration is completed, however, and the parties have agreed that the FAA controls their arbitration, Sections 10 and 11 of the FAA provide the exclusive means to vacate, modify, or correct the award.[43] Under the FAA, the court reviews the arbitration award. Its review "is one of the narrowest standards of judicial review in all of American jurisprudence" and is limited to the narrow

---

[40] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.").

[41] *Id.* ("At the same time the Court has found the phrase 'question of arbitrability' *not* applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter.") (emphasis in original); *see also James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006) (explaining the difference between substantive and procedural arbitrability).

[42] *Moses H. Cone*, 460 U.S. at 24–25.

[43] *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) ("[T]he text [of the FAA] compels a reading of the §§ 10 and 11 categories as exclusive."); *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 909 (6th Cir. 2000) ("Once an arbitration is conducted under a valid arbitration contract, the FAA 'provides the exclusive remedy for challenging acts that taint an arbitration award.'") (quoting *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982)); *Auto Equity Loans of Del., LLC v. Baird*, 232 A.3d 1293, 2020 WL 2764752, at *3 n.24 (Del. May 27, 2020) (TABLE) (explaining that Sections 10 and 11 of the FAA "provide the exclusive grounds for judicial review of arbitration awards").

grounds warranting vacatur of the award under the FAA.[44]  Section 10 of the FAA permits a court to vacate an arbitration award procured by fraud; evident partiality or corruption in the arbitrators; arbitrator misconduct; or when the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[45]  The court can modify or correct an award under Section 11 for "material miscalculation," when the award addresses a matter not submitted to arbitration, or if the award is imperfect in form but not on the merits.[46]  In all cases, "a motion to vacate, modify, or correct an award must be served . . . within three months after the award is filed or

---

[44] *Auto Equity Loans*, 2020 WL 2764752, at *3 (quoting *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014)); *see also Hall St. Assocs.*, 552 U.S. at 588 ("[I]t makes more sense to see the three provisions, §§ 9–11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway."); *Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986) ("Because a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings, it is well settled that judicial review of an arbitration award is very narrowly limited.").
[45] 9 U.S.C. § 10.
[46] *Id*. § 11.

delivered."[47]  If the court does not vacate, modify, or correct an award, the award can be confirmed with the same force and effect as a court judgment.[48]

Once court review under the FAA is finished, the courthouse doors are closed to the dispute.  Some parties, however, have tried to open a new door by filing a follow-on arbitration or legal proceeding.  In the follow-on proceeding, the claims are changed but the goal is the same—trying to undo a loss in the prior arbitration award.  Settled federal and state precedent recognizes these follow-on proceedings as improper end runs around the FAA's exclusive review process.  In the words of those cases, they are improper collateral attacks on the earlier final award.[49]

For instance, in *Corey v. New York Stock Exchange*, the Sixth Circuit held that an arbitration claimant could not circumvent the FAA review procedures by filing a

---

[47] *Id*. § 12; *Corey*, 691 F.2d at 1212 ("Failure to comply with this statutory precondition of timely service of notice forfeits the right to judicial review of the award.").

[48] 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must grant* such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.") (emphasis added); *id*. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."); *id*. § 13 ("The judgment [confirming an arbitration award] so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.").

[49] *See Tex. Brine Co*., *L.L.C. v. Am. Arbitration Assoc*., *Inc*., 955 F.3d 482, 487 (5th Cir. 2020) ("Judicial review in the arbitration context is limited . . . . Further, purportedly independent claims are not a basis for a challenge if they are disguised collateral attacks on the arbitration award.").

second proceeding challenging a prior arbitration award.[50] The plaintiff's claims of arbitrator bias in a follow-on proceeding were "no more, in substance, than an impermissible collateral attack on the award itself" because the FAA "provides the exclusive remedy for challenging acts that taint an arbitration award . . . ."[51] According to the Sixth Circuit, the "complaint has no purpose other than to challenge the very wrongs affecting the award for which review is provided under section 10 of the [FAA]."[52] The court also noted that allowing a collateral attack on the arbitration award would render Section 12's three-month time bar "meaningless if a party to the arbitration proceedings may bring an independent direct action asserting such claims outside of the statutory time period provided for in section 12."[53]

Many other cases have followed this path. In *Prudential Securities Inc. v. Hornsby*, the district court enjoined a second arbitration because the plaintiff's fraud claim was "in reality, an attempt to augment and modify the first arbitration award."[54] Looking at the statement of claim, the court observed that it was "premised entirely on the . . . fraudulent concealment of documents from the original arbitration panel, misconduct in the proceeding itself" and that the plaintiff "define[d] his injury by the impact of [the] fraud on the original award."[55] As that

---

[50] 691 F.2d 1205, 1212 (6th Cir. 1982).
[51] *Id.* at 1211-12.
[52] *Id.* at 1213.
[53] *Id.*
[54] 865 F. Supp. 447, 451 (N.D. Ill. 1994).
[55] *Id.*

court explained, "[b]ecause the policies behind section 10 would be eviscerated if it were only an optional way to modify an arbitration award, an attempt to modify an award by a route or mechanism other than section 10 must be enjoined."[56]

In *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, the plaintiff who prevailed in an arbitration filed suit alleging Merrill Lynch interfered with the arbitration.[57] The district court dismissed the lawsuit and confirmed the arbitration award.[58] The plaintiff responded by filing a second arbitration that mirrored the allegations in her earlier complaint.[59] The *Decker* court emphasized that the prejudice complained-of "resulted from the impact of this action on the arbitration award" and that the claimant's "ultimate objective in this damages suit is to rectify the alleged harm she suffered by receiving a smaller arbitration award than she would have received."[60] Because the FAA "provide[d] the exclusive remedy for challenging acts that taint an arbitration award," the court enjoined the second arbitration and found that the plaintiff's only recourse was to move to vacate the award under FAA procedure.[61] The Sixth Circuit affirmed the district court's injunction, explaining that "[t]he FAA provides the exclusive remedy for

---

[56] *Id.*
[57] 205 F.3d 906, 908 (6th Cir. 2000).
[58] *Id.*
[59] *Id.* at 908–909.
[60] *Id.* at 910.
[61] *Id.* ("Because Decker chose to attack collaterally the arbitration award in violation of the FAA, she fails to state a claim upon which relief may be granted.").

challenging acts that taint an arbitration award whether a party attempts to attack the award through judicial proceedings or through a separate second arbitration."[62] The court refused to permit the plaintiff to "bypass the exclusive and comprehensive nature of the FAA by attempting to arbitrate her claims in a separate second arbitration proceeding."[63]

Also, in *Arrowood Indemnity Co. v. Equitas Insurance Limited*, the Southern District of New York enjoined a second arbitration when certain Underwriters claimed that Arrowood improperly withheld documents in the first arbitration that would have shifted the first arbitration panel's interpretation of a "First Advised Clause."[64] Relying on the FAA's exclusivity as a means to challenge an arbitration award, the district court noted that the Underwriters' "demand for reimbursement is explicitly premised on their assertion that Arrowood 'engaged in intentional misconduct in the recent arbitration'" and the "Underwriters want to recoup the post-

---

[62] *Id.* at 911.
[63] *Id.*
[64] 2015 WL 4597543, at *3 (S.D.N.Y. July 30, 2015).

Award billings that ¶ 15 of the Award requires them to pay . . . ."[65]  Thus, it was a collateral attack "in direct contravention of the FAA" that "must be enjoined."[66]

## B.

The Court of Chancery followed the collateral attack precedent and found that it had jurisdiction to enjoin collateral attacks on prior arbitration awards.  Eni counters by pointing to the TUA's arbitration provision, where the parties agreed to submit "any and every kind or type"[67] of dispute to arbitration.  According to Eni, under the parties' broad arbitration clause, an arbitrator and not the court should decide what it characterizes as the preclusive effect of the First Arbitration award on the Second Arbitration.  Eni points to the United States Supreme Court's recent decision in *Henry Schein*, *Inc. v. Archer & White Sales*, *Inc.*,[68] inferring from the *Schein* decision that collateral attacks on arbitration awards now fall under the

---

[65] *Id.* at *6.
[66] *Id.*
[67] Eni Answering Br. on Appeal & Opening Br. on Cross-Appeal at 41–42.
[68] 139 S. Ct. 524 (2019).

parties' arbitration provision. It also relies on cases where arbitrators decided the *res judicata* effect of prior awards.

In *Schein*, the Court struck down the "wholly groundless" exception to the arbitrability analysis.[69] The Court relied on the text of the FAA as well as precedent requiring that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract . . . . [and] a court possesses no power to decide the arbitrability issue."[70] The Supreme Court held that when the parties delegate gateway issues of arbitrability to arbitrators by "clear and unmistakable" evidence, courts may not employ a "wholly groundless" exception to

---

[69] 139 S. Ct. at 529 ("Even when the parties' contract delegates the threshold arbitrability question to an arbitrator, the Fifth Circuit and some other Courts of Appeals have determined that the court rather than an arbitrator should decide the threshold arbitrability question if, under the contract, the argument for arbitration is wholly groundless."). Delaware has previously employed a "wholly groundless" exception to questions of arbitrability. *See McLaughlin v. McCann*, 942 A.2d 616, 626–27 (Del. Ch. 2008).

[70] *Id.*; *see also Vertiv Corp. v. Svo Building One, LLC*, 2019 WL 1454953, at *3 (D. Del. Apr. 2, 2019) (referring arbitrability question of whether the court could entertain an injunction under the agreement to arbitrate to arbitrators because "*Henry Schein* clarifies that there is no judicial exception available when a contract makes a clear delegation").

override the contractual will of the parties.[71] In the *res judicata* cases, the courts found that the preclusive effect of an arbitration award is for arbitrators to decide.[72]

Neither *Schein* nor the *res judicata* cases control this dispute. As the Court of Chancery noted, the Supreme Court in *Schein* did not address, much less do away with, a court's jurisdiction to enjoin collateral attacks on arbitration awards. And Gulf does not rely on *res judicata* or collateral estoppel to stop Eni from relitigating claims that were, or could have been, raised in the First Arbitration. Rather, Gulf asked the Court of Chancery to enjoin Eni from circumventing the FAA's exclusive and limited review procedures by filing a second arbitration attacking the Final Award.[73]

The Court of Chancery had jurisdiction to enjoin Eni from pursuing the Second Arbitration. First, although the parties agreed to a broad arbitration clause, under the TUA they also agreed that "[t]he award of the arbitral tribunal shall be

---

[71] *Id*. at 529–30.

[72] *Citigroup, Inc. v. Abu Dhabi Inv. Auth*., 776 F.3d 126, 131 (2d Cir. 2015) (without discussing collateral attacks, the court "reason[ed] from our prior decisions interpreting the FAA that the determination of the claim-preclusive effect of a prior federal judgment confirming an arbitration award is to be left to the arbitrators" where the arbitration clause "is sufficiently broad to cover any dispute over whether ADIA's current claims were or could have been raised during the first arbitration"); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 139–40 (3d Cir. 1998) (without discussing collateral attacks, the court decided the parties intended an arbitrator to decide whether a prior arbitration had preclusive effect on a follow-on arbitration).

[73] *See Prudential Sec. Inc. v. Hornsby*, 865 F. Supp. 447, 450 (N.D. Ill. 1994) ("Under the [FAA], an arbitration award is final unless either party moves to vacate or modify the award under section 10 within the three month time period prescribed by section 12 . . . . The strictures of section 10 and section 12 are designed to afford an arbitration award finality in a timely fashion, promoting arbitration as an expedient method of resolving disputes without resort to the courts.").

final and binding" and they "waive[d] any right to appeal from or challenge an arbitral decision or award, or to oppose enforcement of any such decision or award before a court or any governmental authority, except with respect to the limited grounds for modification or non-enforcement provided by an applicable arbitration statute or treaty"—here the FAA.[74] After the parties completed an arbitration, they channeled all challenges to an arbitration award to the courts through the FAA review process. When a party files a follow-on proceeding attacking a prior arbitration award, they circumvent the contractually-agreed FAA review procedure. Stated another way, the follow-on proceeding is a "thinly disguised effort . . . to re-arbitrate, in effect appeal," the prior award.[75] When "carried to its logical conclusion" a follow-on arbitration renders the "final and binding" language of an arbitration clause "meaningless."[76]

Second, when the parties agreed that the FAA controls review of an arbitration award, they signed up for a court to apply an exclusive procedure and the restrictions

---

[74] App. to Opening Br. at A251–252 (TUA Arts. 20.1 (h), (o)).

[75] *Federated Rural Elec. Ins. Exch. v. Nationwide Mut. Ins. Co.*, 134 F. Supp. 2d 923, 927 (S.D. Ohio 2001).

[76] *Id.* at 928.

that accompany it.[77]  In the interest of finality, the FAA allows only narrow grounds to modify, vacate, or correct an arbitration award.  A follow-on proceeding starts from scratch.  And a follow-on proceeding collaterally attacking the prior arbitration award evades the jurisdictional time limit for challenging the award—three months from the award.  A party who "bypass[es] the exclusive and comprehensive nature of the FAA by attempting to arbitrate her claims in a separate second arbitration proceeding"[78] undermines the FAA's goal of a prompt, limited, exclusive, and final

---

[77] Parties cannot contractually alter the FAA's review procedure, which the United States Supreme Court has confirmed is exclusive.  *See Hall St. Assocs*., 552 U.S. at 584 ("We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."); *accord Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012) ("These grounds are exclusive and may not be supplemented by contract.  In sum, when parties agree to resolve their disputes before an arbitrator without involving the courts, the courts will enforce the bargains implicit in such agreements by enforcing arbitration awards absent a reason to doubt the authority or integrity of the arbitral forum."), *aff'd*, 569 U.S. 564 (2013).
[78] *Decker*, 205 F.3d at 911.

means to review an arbitration award.[79] "[T]he policies behind section 10 would be eviscerated if it were only an optional way to modify an arbitration award."[80]

We agree with the observation that "parties are generally free to seek arbitration under a broad arbitration clause" but "courts may intervene if the 'ultimate objective . . . is to rectify the alleged harm' a party suffered from an unfavorable arbitration award 'by attempting to arbitrate [its] claims in a separate arbitration proceeding.'"[81] As the Court of Chancery correctly observed,

> it is not surprising that a decision applying the collateral attack doctrine would not separately consider the question of arbitrability. The point of the doctrine is that a court may intervene to dismiss litigation claims or to enjoin a second round of arbitration based on a prior arbitration in order to vindicate the policies of finality and limited review of

[79] *See Pryor v. IAC/InterActiveCorp.*, 2012 WL 2046827, at *6–7 (Del. Ch. June 7, 2012) (dismissing breach of contract claim "with prejudice because the flaw that this Count is an impermissible collateral attack on the Awards is not curable by proceeding before the arbitrator at this belated stage" despite concluding that "the question of the substantive arbitrability of the fiduciary duty and contract claims [should] be determined by the arbitrator, not this court").

[80] *Prudential*, 865 F. Supp. at 451. Eni raises for the first time in its Reply Brief a recent decision, *Certain Underwriters at Lloyd's, London v. Century Indem. Co.*, 2020 WL 1083360 (D. Mass. Mar. 6, 2020). In that case, the defendant filed a second arbitration after the plaintiff moved to confirm an arbitration award, and subsequently the defendant moved to compel arbitration causing the plaintiff to move to enforce the confirmed arbitration award. *Id.* at *2–3. The plaintiffs argued that the defendant was collaterally attacking the arbitration award, but the defendant countered that the arbitration award did not address the part of the parties' agreement that it was seeking to arbitrate. *Id.* at *3. The district court rejected the plaintiff's collateral attack theory, finding that line of cases distinguishable because, as viewed by the district court, the issue before it was a *res judicata* issue, not a collateral attack. *Id.*

[81] *Arrowood*, 2015 WL 4597543, at *5 (alteration in original) (quoting *Decker*, 205 F.3d at 910–11).

24

arbitration awards embedded in the FAA *notwithstanding the existence of a broad arbitration clause*.[82]

## III.

Having found that the Court of Chancery had jurisdiction to enjoin collateral attacks on arbitration awards, we turn next to whether Eni's Second Arbitration demand collaterally attacked the First Award. In its Second Arbitration demand, Eni asserted three counts—(1) declaratory relief that Gulf breached the TUA; (2) damages and restitution for Gulf's breaches of contract, and (3) declaratory relief, damages, and restitution for Gulf's alleged negligent misrepresentations in the First Arbitration. Eni sought by way of relief:

> the value of the consent that Gulf was required to obtain from Eni in order to pursue its highly-profitable liquefaction/export project; *the amounts that Eni has had to pay to Gulf for Gulf's purported decommissioning of the Pascagoula Facility*; and the value resulting from Gulf's repurposing and reuse of the existing site facilities (such as the storage tanks, pipeline and LNG vessel berthing facilities) and the other cost savings and benefits derived from repurposing the existing brownfield site.[83]

The Court of Chancery enjoined arbitration of Eni's negligent misrepresentation claims, but declined to enjoin Eni's breach of contract claims. As the court held, Eni's negligent misrepresentation claim collaterally attacked the Final Award because the alleged misrepresentations were made in the First Arbitration

---

[82] *Gulf*, 2019 WL 7288767, at *10 (emphasis in original).
[83] App. to Opening Br. at A353 (Second Notice of Arbitration ¶ 64) (emphasis added).

and could have been reviewed through the FAA process. When it came to Eni's breach of contract claims, however, the court held that "the First Tribunal never reached the merits of the claim for breach[] of [contract] and never granted any relief based on that claim . . . ."[84]

Gulf and Eni challenge the Court of Chancery's ruling. Eni argues that the Court of Chancery erred in enjoining its negligent misrepresentation claim in the Second Arbitration because Eni succeeded in terminating the TUA in the First Arbitration, has paid the judgment, and supposedly does not seek to undo the award. It also contends that its misrepresentation claim has "independent significance in the circumstances of the case unrelated to the Final Award."[85] Eni points to what it alleges are perceived inconsistencies between what Gulf was awarded in the First Arbitration and the positions taken by Gulf in the New York litigation, and argues that Gulf's supposed tortious behavior implicates "the parties' broader transaction and dealings as a whole."[86]

Gulf argues that the court should have enjoined the arbitration contract claims because, like Eni's negligent misrepresentation claim, they collaterally attack the

---

[84] *Gulf*, 2019 WL 7288767, at *12.
[85] Eni Answering Br. on Appeal & Opening Br. on Cross-Appeal at 46.
[86] *Id*. at 47.

Final Award.[87]  According to Gulf, when assessing a collateral attack on a prior arbitration award, the question is not the *res judicata* or collateral estoppel effect of the prior arbitration award.  Instead, the court must examine the harm alleged and the relief sought in the Second Arbitration to see whether it is a disguised attempt to get a second review of a prior arbitration award outside the FAA.  Gulf argues that Eni's Second Arbitration collaterally attack the Final Award by two means—raising alleged irregularities in the First Arbitration and trying to recoup the restitution awarded Gulf in the First Award.

We agree with Gulf that the Court of Chancery should have enjoined Eni from pursuing all claims in the Second Arbitration.  Rather than focus on the nature of the claims in the Second Arbitration, the focus should have been on whether Eni sought

---

[87] *Compare* App. to Opening Br. at A350–1 (Second Notice of Arbitration ¶ 57) ("Gulf has engaged in widespread, regular and continuous activities and undertakings that have a purpose and object other than importation and regasification of LNG."); *with id*. at A057 (Final Award ¶ 16) ("Claimant asserted that, in any event, it was entitled to terminate the TUA as a result of a series of alleged contractual breaches by the Respondents.  In particular, Eni argued that [Gulf] breached the TUA by pursuing a gas liquefaction and export project at the Pascagoula Facility, in contravention of the express terms of the TUA . . . ."); *and id*. at A615 (First Notice of Arbitration ¶ 64) ("Eni USA hereby seeks a declaration that, through the conduct of [Gulf] described above, [Gulf] ha[s] breached the warranties and covenants set forth in at least Articles 22.4(a) and 22.4(e) . . . ."); *see also id*. at A353 (Second Notice of Arbitration ¶ 64) (seeking damages in "the amounts that Eni has had to pay to Gulf for Gulf's purported decommissioning of the Pascagoula Facility").

27

through the Second Arbitration to, in effect, "appeal" the Final Award outside the FAA's review process. We find that it did.

First, as the Court of Chancery found, the crux of Eni's misrepresentation claim in the Second Arbitration is that "Gulf procured damages in the First Arbitration by engaging in misconduct that tainted the Final Award."[88] Attacking the veracity of statements made in a First Arbitration that led to the Final Award falls "'squarely within the scope of section 10' of the FAA,"[89] which permits vacatur of an award "where the award was procured by corruption, fraud, or undue means."[90]

---

[88] *Gulf*, 2019 WL 7288767, at *11 ("If Eni had its way, for all practical purposes, the finality of the Final Award would be undone and the monetary recovery Gulf obtained in the First Arbitration would be nullified. This is the epitome of a collateral attack."). In Eni's Second Notice of Arbitration, it alleged that "Gulf had an obligation to make accurate representations in the arbitration and was aware that its statements would be used and relied upon by Eni and the [First Arbitration] tribunal, and Eni and the tribunal in fact relied on Gulf's representations" and "[h]ad Gulf not made these apparent misrepresentations, the compensation amount paid by Eni for decommissioning costs would have been greatly reduced, or reduced to zero." App. to Opening Br. at 354 (Second Notice of Arbitration ¶¶ 73, 75).

[89] *Texas Brine*, 955 F.3d at 489 (quoting *Corey*, 691 F.2d at 1212). *See also, e.g.*, *Decker*, 205 F.3d at 911 ("The FAA provides the exclusive remedy for challenging acts that taint an arbitration award whether a party attempts to attack the award through judicial proceedings or through a separate second arbitration."); *Prudential*, 865 F. Supp. at 451 (enjoining second arbitration where the "claim is premised entirely on the [sic] Prudential's fraudulent concealment of documents from the original arbitration panel, misconduct in the proceeding itself").

[90] 9 U.S.C. § 10; *see Texas Brine*, 955 F.3d at 489 ("Alleging wrongdoing that would justify vacatur is a sign of a collateral attack.").

Eni could have challenged Gulf's representations as part of the FAA's review process and did not. The claim is time-barred under the FAA.[91]

Second, when addressing Eni's breach of contract claims, the court appears to have applied elements of *res judicata* in its analysis. It considered whether Eni's breach of contract claims had been decided in the First Arbitration. Had *res judicata* or collateral estoppel been the issue, referring the arbitrability question to the arbitrators would have been a different issue.[92] But a collateral attack does not hinge upon the nature of the claims or whether they were actually resolved in the prior arbitration. If that was the case, Eni would be free to raise in the Second Arbitration irregularities in the First Arbitration—claims exclusively within Section 10 of the FAA.[93] Instead, as noted earlier, the inquiry is whether the complainant's "ultimate

---

[91] 9 U.S.C. § 12.

[92] *See Citigroup*, 776 F.3d at 131 (holding that claim preclusive effect of federal judgment confirming an award is a question for arbitrators to decide in second arbitration).

[93] *See Texas Brine.*, 955 F.3d at 488 ("The test for a collateral attack is not merely whether the claims attempt to relitigate the facts and defenses that were raised in the prior arbitration.") (internal quotation marks omitted).

objective" is to "rectify the alleged harm [the claimant] suffered" in the first arbitration.[94]

Although Eni tacks on other requested relief, in the Second Arbitration Eni essentially seeks to recover "the amounts that Eni has had to pay to Gulf [under the Final Award] for Gulf's purported decommissioning of the Pascagoula Facility . . . ."[95] Eni tries to back away from this admission with several arguments, none of which are persuasive.

Eni argues that the collateral attack cases are limited to irregularities in arbitrations and do not extend to substantive claims. That is incorrect,[96] and ignores

---

[94] *Decker*, 205 F.3d at 910; *Arrowood*, 2015 WL 4597543, at *5 ("Although parties are generally free to seek arbitration under a broad arbitration clause, courts may intervene if the 'ultimate objective . . . is to rectify the alleged harm' a party suffered from an unfavorable arbitration award 'by attempting to arbitrate [its] claims in a separate second arbitration proceeding.'") (alteration in original) (quoting *Decker*, 205 F.3d at 910-11); *Prudential*, 865 F. Supp. at 451 (refusing an "attempt to arbitrate an 'independent' fraud claim" that was "premised entirely on [alleged] fraudulent concealment of documents from the original arbitration panel, misconduct in the proceedings itself"); *Phillips Petroleum Co. v. Arco Alaska, Inc.*, 1988 WL 60380, at *5 (Del. Ch. June 14, 1988) ("Authorities interpreting the relevant arbitration statutes hold that a claim that a party's prior conduct tainted an arbitration award must be raised in a proceeding to vacate the award. That same body of law proscribes an independent action to challenge the arbitration award.").

[95] App. to Opening Br. at A353 (Second Notice of Arbitration ¶ 64).

[96] *Decker*, 205 F.3d at 910–11 (contract and tort claims brought in follow-on proceeding that did not "directly challenge the [prior] arbitration award" collaterally attacked the prior award); *Gulf Petro Trading Co., Inc. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742. 749–50 (5th Cir. 2008) (claims separate from the claims in a prior arbitration collaterally attacked the prior arbitration); *Corey*, 691 F.2d at 1212–13 (holding that a claimant "may not transform what would ordinarily constitute an impermissible collateral attack into a proper independent action by changing defendants and altering the relief sought").

the fundamental reason why courts redress collateral attacks on arbitration awards—to prevent end runs around the exclusive FAA review process.

Eni also notes that it sought to recover damages and not just the restitution it was required to pay under the Final Award. While Eni characterized its request for relief in the Second Arbitration as damages, it elevates pleading over substance. Eni sought to recoup as damages the amount it paid in restitution. And the First Tribunal already considered whether "deductions should be applied" to reduce the restitution award.[97] Allowing Eni to re-arbitrate deductions to the restitution award would give Eni a mulligan for the First Arbitration. If it was dissatisfied with the result, or was entitled to other relief, it could have sought review under the FAA.[98]

Finally, Eni argues that its contract claims have "independent legal significance," and Eni "need only be able to allege wrongdoing that has caused harm independent of its effect on the arbitration award to avoid the collateral attack

---

[97] App. to Opening Br. at A136 (Final Award ¶ 359).

[98] 9 U.S.C. § 10(a)(4) (vacatur permitted where the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made"); *see also Gulf Petro*, 512 F.3d at 750 ("The relief Gulf Petro seeks—the award it believes it should have received, as well as costs, expenses, and consequential damages stemming from the unfavorable award it did receive—shows that its true objective in this suit is to rectify the harm it suffered in receiving the unfavorable Final Award."); *Ergobilt, Inc. v. Neutral Posture Ergonomics Inc.*, 2002 WL 1489521, at *9 (N.D. Tex. July 9, 2002) (denying leave to file supplemental complaint where the court found "that Plaintiffs' proposed breach of contract action raises the same issues presented by their Motion to Vacate. In fact, the relief requested . . . is exactly the relief Plaintiffs seek by vacating the award, namely, a reduction or offset in the amount of attorney's fees awarded by the arbitrator").

31

label."[99]  Eni appears to make this argument because it wants to assert its breach of contract claims in defense of the Guarantee Agreement litigation.  It is unclear how Eni's defenses in another proceeding bear on the issues before us.  In any event, Gulf states that Eni has been able to raise its breach of contract claims as a defense in the Guarantee Agreement litigation.[100]

Under these circumstances, Eni's breach of contract claims aim to modify the Final Award by revisiting the core issue in the First Arbitration—was the contract terminated and, if so, what is the appropriate remedy?[101]  Had Eni wished to clarify, amend, or challenge the First Arbitration's financial award, it should have done so under the FAA within the three-month limitations period.[102]  Now, "[s]uch arbitral

---

[99] Eni Answering Br. on Appeal & Opening Br. on Cross-Appeal at 23 (quoting *Gulf Petro*, 512 F.3d at 751).

[100] Gulf Reply Br. on Appeal & Answering Br. on Cross-Appeal at 17–18.

[101] *See Prudential*, 865 F. Supp. at 451 (finding allegedly independent fraud claim was "in reality, an attempt to augment and modify the first arbitration award"); *Arrowood*, 2015 WL 4597543, at *6 ("Under these circumstances, the Second Arbitration demand to recover sums already paid amounts to a collateral attack on the merits of the Award.").

[102] 9 U.S.C. § 12.  The FAA permits vacatur "where the arbitrators . . . so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  "An award is mutual, definite and final if it 'resolve[s] all issues submitted to arbitration, and determine[s] each issue fully so that no further litigation is necessary to finalize the obligations of the parties."  *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 686 (2d Cir. 1996) (alteration in original) (quoting *Dighello v. Busconi*, 673 F. Supp. 85, 90 (D. Conn. 1987), *aff'd*, 849 F.2d 1467 (2d Cir. 1988)); *see also Three Bros. Trading, LLC v. Generex Biotechnology Corp.*, 2020 WL 1974243, at *6 (S.D.N.Y. Apr. 24, 2020) (vacating and remanding a portion of an arbitration award under Section 10(a)(4) where arbitrator did not reach "any conclusion" on economic value of warrants and "would undoubtedly result in further litigation to determine the economic value of the warrants").

mulligans are forbidden by the FAA."[103]  Eni's contract claims collaterally attack the Final Award and should have been enjoined.

## IV.

We affirm in part and reverse in part the Court of Chancery's judgment, and remand with instructions for the court to modify its permanent injunction order to enjoin Eni from pursuing all claims in the Second Arbitration.  Jurisdiction is not retained.

---

[103] *Arrowood*, 2015 WL 4597543, at *5.

**VAUGHN**, Justice, dissenting:

The Majority discusses four cases in part II. A. of its opinion. None of them appear to have involved an arbitration clause as broad as the one involved here. The arbitration clause in *Corey v. New York Stock Exchange* was contained in the constitution of the stock exchange.[1] It provided, in relevant part, that "[a]ny controversy . . . shall . . . be submitted for arbitration."[2] The arbitration clause at issue in *Arrowood Indemnity Co. v. Equitas Insurance Ltd.* provided, in relevant part, that "if any dispute shall arise . . . with reference to the interpretation of this Contract . . . the dispute shall be referred to three arbitrators."[3] In *Decker v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* no contractual arbitration language appears, but plaintiff Decker contended that her claims fell "within the scope of a valid arbitration agreement and thus must be arbitrated."[4] In *Prudential Securities Inc. v. Hornsby,*[5] no mention is made of the language of the arbitration agreement. None of these cases appear to be ones where the parties evinced a "clear and unmistakable" agreement to arbitrate the issue of arbitrability, and they do not discuss arbitration language as broad as the arbitration provisions of the agreement in this case.

The Chancellor recognized there are "two different lines of authority

---

[1] 691 F.2d 1205, 1207 n.2 (6th Cir. 1982).
[2] *Id*.
[3] 2015 WL 4597543, at *1 (S.D.N.Y. July 30, 2015).
[4] 205 F.3d 906, 911 (6th Cir. 2000).
[5] 865 F. Supp. 447 (N.D. Ill. 1994).

concerning the arbitration of disputes under the FAA[:]" one that enforces the "policy against collateral attacks on arbitration awards" and one that interprets "broad arbitration clauses as written on the question of arbitrability."[6] In addition to discussing three of the above-mentioned cases from the first line of authority, he discussed two cases from the second line of authority. One is *John Hancock Mutual Life Insurance Co. v. Olick.*[7] A question involved there was whether a prior arbitration precluded claims raised in a second arbitration. As stated by the Third Circuit, the court considered "the question of whether, under the [FAA], a district court has the authority, notwithstanding a valid arbitration clause, to enjoin a party from pursuing arbitration on res judicata grounds arising from both a prior arbitration and a prior judgment."[8] In the part of its analysis discussing "Res judicata Based on the Prior Arbitration[,]" the court set forth the following test:

> [T]he judicial inquiry before compelling or enjoining arbitration is narrow, and the FAA authorizes the district court to explore only two threshold questions in considering a demand for arbitration: (1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?[9]

---

[6] *Gulf LNG Energy, LLC v. Eni USA Gas Marketing LLC*, 2019 WL 7288767, at *1, *4 (Del. Ch. Dec. 30, 2019).

[7] 151 F.3d 132 (3d Cir. 1998).

[8] *Id*. at 133.

[9] *Id*. at 139 (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 228, 233 (3d Cir. 1998)).

Elaborating on this test, the court reasoned that "the proper analytical inquiry mandated under the FAA is to focus on both the existence of a valid arbitration agreement and the nature of that agreement as it relates to the parties' current dispute."[10] The court concluded that "Hancock's res judicata objection based on the prior arbitration is an issue to be arbitrated and is not to be decided by the courts."[11] The court explained its rationale as follows:

> The reasoning underlying this approach is that a provision regarding the finality of arbitration awards is a creature of contract and, like any other contractual provision that is the subject of dispute, it is within the province of arbitration unless it may be said "with positive assurance" that the parties sought to have the matter decided by a court.[12]

The other case in this second "line of authority" discussed by the Chancellor is *Citigroup, Inc. v. Abu Dhabi Investment Authority*.[13] In that case, there was an arbitration award that was confirmed by the District Court for the Southern District of New York. While the confirmation in the district court was still pending, Abu Dhabi (ADIA) served Citigroup with a new notice for a second arbitration. Citigroup sought to enjoin the second arbitration "on the ground that ADIA's new claims were barred by the doctrine of claim preclusion, or *res judicata,* because they

---

[10] *Id.*
[11] *Id.* at 140.
[12] *Id.* at 139 (citing *Local 103 of International Union of Electrical, Radio and Machine Workers v. RCA Corp.*, 516 F.2d 1336, 1340 (3d Cir. 1975)).
[13] 776 F.3d 126 (2d Cir. 2015).

were or could have been raised in the first arbitration."[14]

The Second Circuit concluded that arbitrators should decide the claim-preclusive effect of the judgment confirming the first arbitration award. Its explanation of that conclusion included the following reasoning:

> The FAA's policy favoring arbitration and our precedents interpreting that policy indicate that it is the arbitrators, not the federal courts, who ordinarily should determine the claim-preclusive effect of a federal judgment that confirms an arbitration award. . . . We reason from our prior decisions interpreting the FAA, that the determination of the claim-preclusive effect of a prior federal judgment confirming an arbitration award is to be left to the arbitrators.[15]

The Majority seems to dismiss these cases as "*res judicata* cases" that do not discuss collateral attacks, as though the attorneys who sought to enjoin a second arbitration in those cases just made the wrong arguments. I do not think the cases are so easily disposed of. In *John Hancock,* the court stated that the question presented was a question "under the [FAA]."[16] In *Citigroup,* the court discusses the "FAA's policy favoring arbitration."[17] It is hard for me to imagine that the distinction between *res judicata* and collateral attack would have led to different outcomes in those cases.

---

[14] *Id*. at 128.
[15] *Id*. at 131.
[16] 151 F.3d at 133.
[17] 776 F.3d at 131.

4

The United States Supreme Court has held that the "question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"[18] The Chancellor found that the contract in this case evinces a "clear and unmistakable" agreement to arbitrate the issue of arbitrability,[19] a finding which I think is undeniable given the breadth of the arbitration language.

The parties agreed to arbitrate "any dispute," and "dispute" is defined to include "any dispute over arbitrability or jurisdiction."[20] I would enforce the agreement as written and find that the arbitrability of Eni's negligent misrepresentation and breach of contract claims are issues to be decided by arbitrators, not the courts. I would reverse the Court of Chancery order permanently enjoining Eni from pursuing its negligent misrepresentation claim in the second arbitration.

---

[18] *Gulf*, 2019 WL 7288767, at *6 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).
[19] *Id*. at *7.
[20] *Id*.